1    Counsel listed on the signature page.

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10                               SAN JOSE DIVISION

11

12   VOIP-PAL.COM, INC.,                    Case No. 18-cv-06216-LHK

13                  Plaintiff,              **APPLE'S AND AMAZON'S**
                                            **CONSOLIDATED NOTICE OF MOTION**
14          v.                              **AND MOTION TO DISMISS PLAINTIFF'S**
                                            **COMPLAINT; MEMORANDUM OF**
15   APPLE INC.,                            **POINTS AND AUTHORITIES IN SUPPORT**

16                  Defendant.             **ORAL ARGUMENT REQUESTED**

17                                          **JURY TRIAL DEMANDED**

18   VOIP-PAL.COM, INC.                     Case No. 18-cv-07020-LHK

19                  Plaintiff,              Date:    Requested, but not yet set.
                                            Time:    Requested, but not yet set
20          v.                              Place:   Courtroom 8 – 4th floor
                                            Judge:   Hon. Lucy H. Koh
21   AMAZON.COM, INC. and AMAZON
     TECHNOLOGIES, INC.                     *[Proposed Order filed concurrently herewith]*
22
                    Defendants.
23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   PROCEDURAL BACKGROUND ........................................................................... 3

III.  STATEMENT OF THE RELEVANT FACTS ......................................................... 3

    A.    The Asserted Patents ................................................................................... 3

    B.    The Asserted Claims .................................................................................... 5

IV.   LEGAL STANDARDS ........................................................................................... 6

    A.    Motion To Dismiss Under Federal Rule Of Civil Procedure 12(b)(6) ................. 6

    B.    Motion To Dismiss For Failure To Satisfy 35 U.S.C. § 101 ................................ 6

    C.    Patent-Eligible Subject Matter Under 35 U.S.C. § 101 ........................................ 7

V.    ARGUMENT .......................................................................................................... 7

    A.    Claim 1 Of The '002 Patent Is Representative Of The Asserted Claims ............... 7

    B.    Under Alice Step One, The Representative Claim Is Directed To The
Abstract Idea Of Using Participant Information To Determine Where To
Route A Communication ................................................................................. 10

        1.    The Representative Claim Is Directed To Gathering And Processing
Information .......................................................................................... 10

        2.    The Representative Claim Is Directed To The Mental Process Of
Determining Where To Route A Communication .................................... 11

        3.    Determining Where To Route Communications Based On
Information About The Participants Is A Longstanding
Fundamental Practice ........................................................................... 12

        4.    The Representative Claim Is Directed To A Functional Result, Not
An Improvement In Computer Functionality ........................................... 14

    C.    Under Alice Step Two, The Claims Lack An Inventive Concept ......................... 16

        1.    Considered Individually, The Elements Of The Representative
Claim Do Not Include An Inventive Concept .......................................... 17

        2.    Considered As An Ordered Combination, The Elements Of The
Representative Claim Do Not Include An Inventive Concept .................... 18

**TABLE OF CONTENTS**
(continued)

Page

D.   No Additional Limitations In The Other Asserted Claims Impart Subject-Matter Eligibility ................................................................................................ 19

E.   No Questions Of Fact Preclude A Finding Of Invalidity Under Section 101 ....... 22

VI.   CONCLUSION ............................................................................................................. 23

# TABLE OF AUTHORITIES

**CASES**

*24/7 Customer, Inc. v. LivePerson, Inc.*,
No. 15-cv-02897-JST, 2017 WL 2311272 (N.D. Cal. May 25, 2017) ....................................15

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
890 F.3d 1121 (Fed. Cir. 2018).........................................................................................6, 22

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ................................................................................................... *passim*

*Audatex North Am., Inc. v. Mitchell Int'l, Inc.*,
703 F. App'x. 986 (Fed. Cir. 2017) .....................................................................................19

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016)......................................................................................18, 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................................6

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)..............................................................................................6

*Bilski v. Kappos*,
561 U.S. 593 (2010)......................................................................................................12, 18

*BroadSoft, Inc. v. CallWave Communications, LLC.*
282 F. Supp. 3d 771 (D. Del. 2017)......................................................................................15

*Brown v. Elec. Arts, Inc.*,
724 F.3d 1235 (9th Cir. 2013)................................................................................................6

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014)............................................................................................14

*Content Aggregation Sols. LLC v. Blu Prods., Inc.*,
No. 3:16-cv-00527-BEN-KSC, 2016 WL 6995490 (S.D. Cal. Nov. 29, 2016) .....................14

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014)................................................................................... *passim*

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
558 F. App'x 988 (Fed. Cir. 2014) .......................................................................................19

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011)..........................................................................7, 11, 12, 20

-iii-

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014)..................................................................................19

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)........................................................................... *passim*

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016)..................................................................................11

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011)......................................................................................6

*Glasswall Sols. Ltd. v. Clearswift Ltd.*,
    No. 18-1407, 2018 WL 6720014 (Fed. Cir. Dec. 20, 2018) ....................................14

*Gottschalk v. Benson*,
    409 U.S. 63 (1972)....................................................................................................11

*Immersion v. Fitbit*,
    313 F. Supp. 3d 1005 (N.D. Cal. 2018) ..............................................................6, 22

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016)....................................................................................16

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
    235 F. Supp. 3d 577 (D. Del. 2016)..........................................................................20

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015)..................................................................................21

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)........................................................................... *passim*

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015)..................................................................................15

*Jones v. Flowers*,
    547 U.S. 220 (2006)..................................................................................................13

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012)......................................................................................11, 18, 19

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016)..................................................................................14

*MyMail, Ltd. v. ooVoo, LLC*,
    313 F. Supp. 3d 1095 (N.D. Cal. 2018) ......................................................................7

*Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*,
    161 F. Supp. 3d 325 (D. Del. 2015), *aff'd* 671 F. App'x 777 (Fed. Cir. 2016) ......21

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    735 F. App'x 241 (9th Cir. 2018) ............................................................................6

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017) ............................................................................21

*SAP Am., Inc. v. Investpic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ..........................................................6, 11, 18, 22

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*,
    873 F.3d 1364 (Fed. Cir. 2017) ..............................................................................8

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016) ....................................................................11, 22

*TDE Petroleum Data Sols., Inc., v. AKM Enter., Inc.*,
    657 F. App'x. 991 (Fed. Cir. 2016) ......................................................................15

*Twilio, Inc. v. Telesign Corporation*,
    249 F. Supp. 3d 1123 (N.D. Cal. 2017) ....................................................16, 18, 21

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ....................................................7, 14, 18, 19

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F. 3d 709 (Fed. Cir. 2014) ..............................................................................7

*VoIP-Pal.com, Inc. v. Apple Inc.*,
    Case No. 5:18-cv-06217-LHK (N.D. Cal.), ECF No. 75 ....................................3, 4

*Whitepages, Inc. v. Isaacs*,
    196 F. Supp. 3d 1128 (N.D. Cal. 2016), *aff'd*, 698 F. App'x 613 (Fed. Cir.
    2017) ....................................................................................................................12

**STATUTES**

35 U.S.C. § 101 ...........................................................................................................1, 22

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ................................................................1, 5, 6

1

**NOTICE OF MOTION AND MOTION TO DISMISS**

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that on a date and at a time to be set[1], before the Honorable Lucy

4

H. Koh, at the United States District Court for the Northern District of California, San Jose

5

Courthouse, 280 South 1st Street, San Jose, California 95113, in Courtroom 8, 4th Floor,

6

Defendants Apple Inc. ("Apple"); Amazon.com, Inc. and Amazon Technologies, Inc. ("Amazon")

7

(collectively, "Defendants") will and do hereby move under Federal Rule of Civil Procedure

8

12(b)(6) to dismiss with prejudice Plaintiff VoIP-Pal.com, Inc.'s ("VoIP-Pal") Complaints for

9

failure to state a claim upon which relief may be granted.

10

As explained in the attached Memorandum of Points and Authorities, VoIP-Pal's claims of

11

patent infringement against Defendants should be dismissed because all asserted claims of U.S.

12

Patent Nos. 9,826,002 ("the '002 patent"), 9,948,549 ("the '549 patent"), 9,813,330 ("the '330

13

patent"), and 9,537,762 ("the '762 patent") (collectively, "the Asserted Patents") are invalid under

14

35 U.S.C. § 101 for claiming patent-ineligible subject matter.

15

The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and

16

Authorities filed herewith, the pleadings, papers, and entire record herein, oral argument in this

17

matter, and upon such other matters as may be presented to the Court at or before the hearing on

18

this Motion.

19

**MEMORANDUM OF POINTS AND AUTHORITIES**

20

**I.    INTRODUCTION**

21

VoIP-Pal's complaints against Apple and Amazon should be dismissed because all asserted

22

claims of the '002, '549, '330, and '762 patents are invalid for claiming patent-ineligible subject

23

matter under 35 U.S.C. § 101.  The claims attempt to monopolize the concept of ***using participant***

24

***information to determine where to route a communication*** in the context of the Internet, carried

25

out by generic and conventional network components.

26

27

---

28

[1] On February 15, 2019, Defendants requested a hearing date convenient for the Court but, at the time of filing the motion, had not yet received a hearing date.

1    Numerous factors confirm that the asserted claims are directed to an abstract idea.  First,

2    each claim focuses on the gathering and processing of intangible information.  For example, each

3    claim requires receiving a participant's information, processing that information to find related

4    information about the participants, using that information to classify the communication, and

5    transmitting the categorization.  Second, VoIP-Pal's claims cloak a mental process in the language

6    of generic controllers and processors.  Specifically, the claims require:  (1) receiving identifiers for

7    the participants to the communication; (2) locating "attributes" associated with the first participant;

8    (3) reformatting the second participant's identifier based on the first participant's attributes; and (4)

9    classifying and determining where to route the communication based on the reformatted identifier.

10   Each of those steps can be accomplished in a person's mind or with pencil and paper.  Third, the

11   process of determining where to route communications has long been performed by humans.  Here,

12   the claims are analogous to a brick-and-mortar mailroom that accepts, sorts, and delivers pieces of

13   mail to their appropriate destinations based on the attributes of the sender and addressee.  Finally,

14   the claims do not recite any improvement to routing technology.  Rather, each element of the claims

15   is expressed as a function of the desired result, achieved through the tools of a standard computer.

16   For example, the claims recite "processing" an identifier "via the at least one processor based on at

17   least one attribute," "classifying the communication, via the at least one processor" if a "first

18   network criterion is met," and "producing via the at least one processor a routing message."  Pairing

19   functional language with repeated reference to generic computer hardware such as a "processor" is

20   a hallmark of claims directed to an abstract idea.

21   Moreover, none of the limitations of the asserted claims includes any inventive concept to

22   transform the claims into a patent-eligible invention.  Considered individually, each of the claim

23   limitations is a well-understood, routine, and conventional step for carrying out communication-

24   routing decisions.  For example, the claims recite a generic communication device ("a first

25   participant device operable to establish a communication using the system to a second participant

26   device"), a generic user profile with generic attributes ("a first participant profile comprising one

27   or more attributes associated with the first participant"), and a generic processor ("a processor

28   operably configured to execute program code stored in at least one memory").  Considered as an

                                             -2-

ordered combination, the claims recite a conventional approach to determining where to route a communication:  the relevant data is retrieved, then analyzed according to rules, which dictates a routing decision based on that analysis.

## II.     PROCEDURAL BACKGROUND

These cases were originally filed in the District of Nevada and were subsequently transferred to the Northern District of California, where they were deemed related and consolidated for pretrial purposes.  On December 19, 2018, VoIP-Pal narrowed its asserted claims against the Defendants.  (Apple ECF No. 49.)  On January 10, 2019, in a related case, Apple filed a motion to dismiss VoIP-Pal's claims concerning U.S. Patent Nos. 8,542,815 and 9,179,005.  (*VoIP-Pal.com, Inc. v. Apple Inc.*, Case No. 5:18-cv-06217-LHK (N.D. Cal.) (the "Related Case"), ECF No. 75).

## III.    STATEMENT OF THE RELEVANT FACTS

### A.     The Asserted Patents

All of the Asserted Patents are titled "Producing Routing Messages for Voice over IP Communications" and share a common specification and a common priority claim to a provisional application filed on November 2, 2006.[2]  The '002 patent and the '549 patent are both continuations of the '330 patent.  The '330 patent is a continuation of the '762 patent.  The '762 patent is a continuation of the '005 patent that is the subject of Apple's motion to dismiss in the Related Case. VoIP-Pal represents that the Asserted Patents generally relate to internet protocol (IP) communications, including routing communications over the Internet.  (Apple ECF No. 1 ¶¶ 13, 18; Amazon ECF No. 1 ¶¶ 16, 21.)  In its Complaint against Apple, VoIP-Pal alleges that Apple infringes the Asserted Patents by offering communication services including iMessage® and Facetime®.  (Apple ECF No. 1, ¶¶ 29, 38, 47, 56.)  Likewise, in its Complaint against Amazon, VoIP-Pal alleges that Amazon infringes the Asserted Patents by offering communication services including the Amazon Alexa Calling and Messaging System and the Amazon Alexa Calling Devices.  (Amazon ECF No. 1, ¶¶ 31, 40, 49, 58.)

---

[2] For simplicity, this Motion cites only the specification of the '002 patent.  For purposes of this motion, Movants assume, but do not concede, a priority date of November 2, 2006, for the claims of the '002, '549, '330, and '762 patents.

1    The focus of the Asserted Patents is classifying calls by routing path, based on information
2    about the caller and callee.  '002 patent, Abstract.  This process is implemented entirely through
3    standard, generic components and "conventional internet services."   *Id.* at 13:32-35.   The
4    specification describes preexisting "IP telephony switches" that enabled voice calls to be connected
5    using known IP and telephone networks, such as "within or between IP networks, and between an
6    IP network and a switched circuit network (SCN), such as the public switched telephone network
7    (PSTN)."   *Id.* at 1:30-34.   The process described in the patents begins in Figure 1:  when a
8    communication is initiated, a "call controller" sends a request message to a "routing controller."
9    *Id.* at 14:51-58; *see* Figure 5.  The routing controller will produce a routing message that directs the
10   call controller to establish a communication link either over the same network, a different network,
11   or to a PSTN gateway.  *Id.* at 14:58-64.  The specification states that the call controller and routing
12   controller "may be implemented as separate modules on a common computer system or by separate
13   computers, for example."   *Id*. at 13:51-53.   The routing controller is described generally as
14   comprising a processor, program memory, table memory, buffer memory, and an I/O port.  *Id*. at
15   17:65-18:6.  Figure 15 shows a "generic routing message" which includes the callee's number in a
16   form compatible with either the PSTN or the voice-over-IP system, and an address for a node to
17   carry the call within the system or an address for the gateway to the PSTN.  *Id.* at 21:47-60; 25:49-
18   54.

19       The routing controller's routing message, and thereby the call's destination, is the result of
20   a classification process.  First, the routing controller processor retrieves a dialing profile for the
21   caller that contains basic information such as the caller's National Dialing Digits (NDD),
22   International Dialing Digits (IDD), country code, and local area code.  *Id*. at 18:40-49; Figure 11.
23   This profile can also include call-blocking records associated with the caller.  *Id.* at 20:6-12; *see*
24   Figure 26.  The routing controller then compares portions of the callee identifier to the caller's
25   dialing profile to determine whether to route the call as a "private system call" or "public system
26   call."  *Id.* at Figure 8B.

27

28

-4-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.     The Asserted Claims**

VoIP-Pal asserts the following claims against both Apple and Amazon:  claims 1, 12, 22, 26, and 29 of the '002 patent; claims 2, 6, 9, 12, 17, and 24 of the '549 patent; claims 3, 4, 12, and 14 of the '330 patent; and claims 6, 16, 21, 26, and 30 of the '762 patent.  (Apple ECF No. 49; Amazon ECF No. 34.)  All asserted claims relate to the process of classifying communications based on the participants' information and then determining where to route the communication based on that classification.  For example, claim 1 of the '002 patent recites:

> 1. A method of routing a communication in a communication system between an Internet-connected first participant device associated with a first participant and a second participant device associated with a second participant, the method comprising:
>
> in response to initiation of the communication by the first participant device, receiving, by a controller comprising at least one processor, over an Internet protocol (IP) network a first participant identifier and a second participant identifier, the second participant identifier being associated with the second participant device;
>
> causing the at least one processor to access a database comprising user profiles, using the first participant identifier, each user profile associating a respective plurality of attributes with a respective user, to locate a plurality of first participant attributes;
>
> processing the second participant identifier, using the at least one processor, based on at least one of the plurality of first participant attributes obtained from a user profile for the first participant, to produce a new second participant identifier;
>
> classifying the communication, based on the new second participant identifier, as a system communication or an external network communication, using the at least one processor;
>
> when the communication is classified as a system communication, producing a system routing message identifying an Internet address associated with the second participant device, using the at least one processor, wherein the system routing message causes the communication to be established to the second participant device; and

1
2
3
4
5

> when the communication is classified as an external network communication,
> producing an external network routing message identifying an Internet
> address associated with a gateway to an external network, using the at least
> one processor, wherein the external network routing message causes the
> communication to the second participant device to be established using the
> gateway to the external network.

6   **IV.   LEGAL STANDARDS**

7       **A.   Motion To Dismiss Under Federal Rule Of Civil Procedure 12(b)(6)**

8       Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a

9   complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

10  To overcome a Rule 12(b)(6) motion, "the plaintiff must allege 'enough facts to state a claim to

11  relief that is plausible on its face.'" *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med.*

12  *Progress*, 735 F. App'x 241, 245 (9th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

13  544, 570 (2007)).  For a motion to dismiss under Rule 12(b)(6), the factual allegations in the

14  complaint are accepted as true and the pleadings are construed in the light most favorable to the

15  plaintiff. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013).  However, the Court

16  is not required to accept the plaintiff's legal conclusions as true, even if they are recited as factual

17  allegations. *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).

18      **B.   Motion To Dismiss For Failure To Satisfy 35 U.S.C. § 101**

19      Whether a claim recites patent-eligible matter under Section 101 is a question of law, which

20  may involve underlying facts. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018);

21  *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1121, 1125 (Fed. Cir. 2018)).  This

22  question is frequently resolved on the pleadings "where the undisputed facts, considered under the

23  standards required by that Rule, require a holding of ineligibility under the substantive standards

24  of law." *SAP Am., Inc. v. Investpic, LLC*, 898 F. 3d 1161, 1166 (Fed. Cir. 2018); *see Immersion v.*

25  *Fitbit*, 313 F. Supp. 3d 1005, 1016 (N.D. Cal. 2018) ("Where the court has a 'full understanding of

26  the basic character of the claimed subject matter,' the question of patent eligibility may properly be

27  resolved on the pleadings.") (quoting *Content Extraction & Transmission LLC v. Wells Fargo*

28  *Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014)).

1

### C.     Patent-Eligible Subject Matter Under 35 U.S.C. § 101

2          Abstract ideas are not patentable.  *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

3   In *Alice*, the Supreme Court set out the two-step process for analyzing patent eligibility.  *Id.* at 217-

4   18.

5          At *Alice* step one, a court determines whether a claim's character as a whole is directed to

6   an abstract idea.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

7   Courts have considered several factors when determining if claims are directed to an abstract idea,

8   such as:  whether the claims are limited to acquiring and manipulating information, *Elec. Power*

9   *Grp.*, 830 F.3d at 1354; whether the claims could be performed as a series of mental steps or by a

10  person with pencil and paper, *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372

11  (Fed. Cir. 2011); whether the claims cover a longstanding fundamental practice implemented on a

12  computer, *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317-18 (Fed. Cir. 2016);

13  and whether the claims are purely functional in nature rather than containing specificity sufficient

14  to recite how a claimed function is achieved, *Two-Way Media Ltd. v. Comcast Cable Commc'ns,*

15  *LLC*, 874 F.3d 1329, 1337-38 (Fed. Cir. 2017).

16         At *Alice* step two, a court "consider[s] the elements of the claim—both individually and as

17  an ordered combination—to assess whether the additional elements transform the nature of the

18  claim into a patent-eligible application of the abstract idea."  *Content Extraction*, 776 F.3d at 1347

19  (citing *Alice*, 573 U.S. at 217-18).  This requires more than the performance of "well-understood,

20  routine, [and] conventional activities previously known to the industry."  *Content Extraction*, 776

21  F.3d at 1347-48 (quoting *Alice*, 573 U.S. at 225).  A patentee cannot save a claim drawn to an

22  abstract idea by limiting the claim to a particular technological environment.  *Ultramercial, Inc. v.*

23  *Hulu, LLC*, 772 F. 3d 709, 716 (Fed. Cir. 2014).

24  ### V.     ARGUMENT

25  ### A.     Claim 1 Of The '002 Patent Is Representative Of The Asserted Claims.

26         Representative claims may be used in analyzing subject matter eligibility where all of the

27  claims are "substantially similar and linked to the same abstract idea," particularly where the

28

"claims contain substantially similar wording" and the patents share an identical specification. *Content Extraction*, 776 F.3d at 1348 (citation omitted); *MyMail, Ltd. v. ooVoo, LLC*, 313 F. Supp. 3d 1095, 1107 (N.D. Cal. 2018).

Claim 1 of the '002 patent is representative of VoIP-Pal's asserted claims for purposes of analyzing subject-matter eligibility. Representative claim 1 recites "a method of routing communications" with the following steps: (1) receiving identifiers associated with the first and second participant to a communication; (2) locating attributes associated with the first participant; (3) processing the second participant's identifier based on the attributes of the first participant ; and (4) based on the processed identifier, classifying and routing the communication to either an internal or external system using the new identifier, which causes the communication to be established with the second participant. The purpose of those steps is to determine where the communication should be routed by using the participants' information to classify the communication—*i.e.*, as explained below, the claim is directed to the abstract idea of ***using participant information to determine where to route a communication***.

Here, claim 1 of the '002 patent is representative because it captures all relevant concepts set forth in the asserted claims. *See Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1368 n.7 (Fed. Cir. 2017). Beginning with the '002 patent, independent claim 12 claims an apparatus with the same limitations as the representative claim, which is a method claim. Dependent claims 22 and 29 do not change the overall character of the claims; they add further restrictions on how to select the address for the routing message, either by looking up a user profile or by selecting an Internet gateway among a plurality of gateways. Dependent claim 26 includes the additional step of considering whether to block the communication based on the participants' attributes. The additional blocking step is secondary to the claim's overall purpose of determining where to route the communication, for a determination of whether to route at all is subsumed in the determination of where to route the communication.

The asserted claims of the '549 patent are similarly represented by claim 1 of the '002 patent. Independent claims 1 (a method claim) and 17 (an apparatus claim) require the same steps as the representative claim with the additional step of loading the attributes into generic memory,

a precursor step that explains how the attributes are made available to the processor.[3]   The dependent claims add other limitations that do not shift the focus, such as causing a communication to be established over an IP network (claims 2 and 24), classifying the communication based on device capabilities (claim 6) and further database look-ups (claims 9 and 24), and implementing blocking rules (claim 12).  Claim 12 includes the step of determining whether a communication to a third device is permitted, but this further communication is mediated through the same classification process as the representative claim.

Continuing with the '330 patent, independent claims 1 (a method claim) and 12 (an apparatus claim) recite the same steps as the representative claim with the further clarification that system communications are routed to a generic node found in the second participant's user profile.[4]   The dependent claims recite additional limitations regarding the system node being one of a plurality of nodes (claim 3), further database look-ups for the classification step (claim 4), and blocking rules (claim 14).  Claim 14's limitations requiring the communication to be routed over IP or over a circuit-switched network depending on the communication's classification are within the representative claim's focus because the routing classification technique remains the same regardless of which type of networks are destinations.

Finally, concerning the '762 patent, independent claims 1, 21, and 25 recite essentially the same steps as the representative claim, specifying that the classification depends on whether the second participant is registered with the system while not requiring that the first participant utilize an Internet connected device.[5]   Claim 25 recites a system with the same limitations as claim 1, a method claim.  Claim 21 includes the additional step of producing a generic error message if blocking criteria are met, which does not substantively change the character of the claims.  Claim 16 claims a computer-readable medium that performs a method that is functionally identical to the

---

[3] Claim 1 of the '549 patent is not asserted but is incorporated by reference into asserted dependent claims 2, 6, 9, and 12.
[4] Claim 1 of the '330 patent is not asserted but is incorporated by reference into asserted dependent claims 3 and 4.
[5] Claim 1 of the '762 patent is not asserted but is incorporated by reference into asserted dependent claims 6 and 16.  Claim 25 is not asserted but is incorporated by reference into asserted dependent claims 26 and 30.

1    representative claim.  The other dependent claims concern other blocking criteria (claims 6 and 26)

2    and an additional comparison of the participants' information (claim 30).  These variations on the

3    routing determination process do not constitute a departure from the representative claim's focus

4    on classifying and routing a communication.

5        In sum, all of the asserted claims should fall together regarding subject-matter eligibility

6    because they are substantially similar to claim 1 of the '002 patent.

7    **B.**    **Under *Alice* Step One, The Representative Claim Is Directed To The Abstract Idea Of Using Participant Information To Determine Where To Route A Communication.**

8

9        Representative claim 1 of the '002 patent is drawn to the abstract idea of ***using participant***

10   ***information to determine where to route a communication***.  At least the following factors confirm

11   the abstract nature of that claim, and all of the asserted claims:  they recite the intangible acts of

12   gathering and processing information; they are directed to a process that a person can perform in

13   one's mind or with pencil and paper; they claim a generic computer implementation of the

14   longstanding, fundamental practice of sorting communications; and they recite claims in results-

15   based functional language as opposed to specific improvements to routing technology.

16   **1.**    **The Representative Claim Is Directed To Gathering And Processing Information.**

17

18       The representative claim is directed to the intangible acts of acquiring and analyzing

19   information:  the claimed system loads an identification of two participants to a communication,

20   looks up attributes associated with the first participant, processes that information to find "new"

21   information about the participants, classifies the communication based on the new information, and

22   determines where to route the communication based on that classification.  Courts have repeatedly

23   found such data collection and processing steps to be directed to an abstract idea.  For example, in

24   *Electric Power Group*, the Federal Circuit considered claims that pertained to collecting and

25   analyzing information to monitor the overall vulnerability of a power grid.  830 F.3d at 1351-52.

26   The court concluded that, despite the narrow type of information collected, such information

27   gathering and analysis fell squarely within the abstract-ideas exception to Section 101.  *Id.* at 1354.

28   Likewise, in *Content Extraction*, the Federal Circuit found that claims written to capture the process

-10-

of analyzing a scan of a check to extract and store information were directed to the abstract idea of collecting, recognizing, and storing particular kinds of data.  776 F.3d at 1347.

In a similar vein, courts have found that claims focused on characterizing incoming data and acting based on that characterization were directed to abstract ideas.  *See FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016) (claims directed to abstract idea of "collecting and analyzing information to detect misuse and notifying a user when misuse is detected"); *Symantec*, 838 F.3d at 1313 (claims directed to abstract idea of "receiving e-mail (and other data file) identifiers, characterizing e-mail based on the identifiers, and communicating the characterization").  Restrictions limiting the kind of information gathered are immaterial.  *See Elec. Power Grp.*, 830 F. 3d at 1354 ("Accordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas."); *SAP*, 898 F.3d at 1168 (rejecting defendant's contention that collecting and analyzing information from a particular source can render the claimed process non-abstract).

In short, claims must do more than collect, process, and output information to satisfy § 101.  Here, the asserted claims are directed solely to manipulating information and fail step one of the *Alice* test.

### 2.    The Representative Claim Is Directed To The Mental Process Of Determining Where To Route A Communication.

Computerized calculations that could be accomplished mentally or with a pencil and paper are unpatentable.  *See Gottschalk v. Benson*, 409 U.S. 63, 67 (1972); *CyberSource*, 654 F.3d at 1373; *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1146-47 (Fed. Cir. 2016) (reaffirming the mental process doctrine after *Alice* and *Mayo*).  That is the nature of the asserted claims—they are directed to processes for classifying and routing communications that could be performed as a series of mental steps.

Specifically, the representative claim requires:  (1) receiving identifiers for the participants after a communication is initiated; (2) locating attributes associated with the first participant; (3) processing the second participant's identifier based on the first participant's attributes; and (4)

classifying and sending a routing message based on the processed identifier.  Those are all steps that a call operator could perform mentally.  For example, once a caller initiates a call routing request, the operator would receive information identifying the caller ("the first participant identifier") and the dialed digits (the "second participant identifier").  *Cf. CyberSource*, 654 F.3d at 1372 ("'[O]btaining information about other transactions . . . ' can be performed by a human who simply reads records of Internet credit card transactions from a preexisting database.").  The operator could then look up the caller in a phone book to find further caller attributes, such as a full phone number or location.  If needed, the operator could easily "process" the callee's identifier by removing or adding digits to the dialed number if the call is local or international relative to the caller.  Then, the operator could compare that information to a network subscriber directory to determine if the call should be routed as an internal or external network call.  *Cf. Whitepages, Inc. v. Isaacs*, 196 F. Supp. 3d 1128, 1133 (N.D. Cal. 2016) (describing a database look-up for information associated with a phone number as an abstract idea analogous to a human "sliding a finger down the columns of a phone book"), *aff'd*, 698 F. App'x 613 (Fed. Cir. 2017).

Although the representative claim calls for steps to be performed by a "processor" and for the communication to be established once an appropriate classification is made, generic computer implementation and post-solution activities do not alter the purpose or character of the claim.  *See Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010); *Symantec*, 838 F.3d at 1318 (finding the concept of email sorting abstract in part because "with the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper").  Because the claimed steps can be performed as a mental process, the asserted claims are directed to an abstract idea.

        **3.**      **Determining Where To Route Communications Based On Information About The Participants Is A Longstanding Fundamental Practice.**

Courts have consistently held that claims drawn to longstanding, fundamental practices for organizing human activity are directed to abstract ideas.  *See Alice*, 573 U.S. at 219 (intermediated settlement is an abstract idea because it is a long prevalent, fundamental practice); *Symantec*, 838 F.3d at 1314 & n.5 (collecting fundamental activities considered abstract ideas).  Here, VoIP-Pal

has attempted to capture the practice of determining where to route communications based on participant information.  As confirmed by precedent and by analogy to a paper-based, brick-and-mortar mailroom, this routing practice is the kind of longstanding, fundamental activity that is abstract.

*Symantec* is particularly instructive.  There, the Federal Circuit held that claims related to receiving, screening, and routing email according to established rules were drawn to the abstract idea of screening messages by corporate organizations.  838 F.3d at 1318.  The court analogized the claims to standard procedures in a corporate mailroom, which would "receive correspondence, keep business rules defining actions to be taken regarding correspondence based on attributes of the correspondence, apply those business rules to correspondence, and take certain actions based on the application of business rules."  *Id.* at 1317.  Even though the claims required generic computer implementation, the court considered the claims directed to a "conventional business practice" with a particularized application to electronic communications.  *Id*. at 1318.

Here, the representative claim can be analogized to a similar operation in a corporate mailroom:  a communication is received, such as a letter dropped in an outbox by an employee; the communication is classified based on participant attributes as either a "system communication" if the sender and recipient are in the same office location or as an "external network communication" for all other recipients; and the communication is routed based on the classification, such as sorting the letter for intra-office or postal mail delivery.

In *Symantec*, the Federal Circuit also held that claims directed to filtering emails based on identifiers were drawn to the abstract idea of receiving file identifiers, characterizing the file based on the identifiers, and communicating the characterization.  *Id*. at 1313.  The court compared those claims to the "long-prevalent practice" of discarding paper mail by looking at the identifiers (the sender and the addressee) on the envelope and consulting a mental list of characteristics that would determine if the mail was worthwhile or unwanted.  *Id*. at 1314 & n.6 ("[I]t is common for 'an occupant who receives generically addressed mail [to] discard it as junk mail.'") (quoting *Jones v. Flowers*, 547 U.S. 220, 248 (2006) (Thomas, J., dissenting)).  There, the extension of that concept to email and the Internet did not impart subject-matter eligibility to the claims.  *Symantec*, 838 F.3d

at 1314.   VoIP-Pal's claims fare no better because the process of determining where to route communications uses the same technique as classifying a letter by analyzing identifiers associated with the communication.

The asserted claims can also be analogized to longstanding practices occurring in telephone control rooms.  In the classic setup, operators would monitor incoming calls and route them via switchboard to the appropriate locations.  This process inevitably involved deciding where to route communications (at times, as between a local or long-distance network) based on the participants' identifying information (*e.g.*, their phone numbers and locations).  The asserted claims differ only in their computer-based technological environment, which is insufficient to confer patentability on a fundamental practice routinely performed in a brick-and-mortar context.  *Symantec*, 838 F.3d at 1319; *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354 (Fed. Cir. 2014).

### 4.   The Representative Claim Is Directed To A Functional Result, Not An Improvement In Computer Functionality.

The representative claim does not improve any specific computer functionality.  Though it recites the use of computer technology, the claim is directed to the functional result of determining where to route a communication.  Any recited computer or tangible element is merely a tool to carry out the function described.  Claims written in result-based functional language, reciting no particular way of performing a function, are patent-ineligible.  *See Two-Way Media*, 874 F.3d at 1337-38; *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("We therefore look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery."); *Glasswall Sols. Ltd. v. Clearswift Ltd.*, No. 18-1407, 2018 WL 6720014, at *1 (Fed. Cir. Dec. 20, 2018).

The limitations in the representative claim lack any specialized technology or specificity regarding how to carry out the recited generic functions.  Once the first participant has initiated a communication, a pre-stored sequence of actions is triggered.  *See Content Aggregation Sols. LLC v. Blu Prods., Inc.*, No. 3:16-cv-00527-BEN-KSC, 2016 WL 6995490, at *4 (S.D. Cal. Nov. 29, 2016) (invalidating claims requiring "that the user takes a single action, which triggers a pre-stored

1  sequence of actions based on that single command").  But the claim does not address how those

2  steps are achieved.  In particular, it fails to specify how:  (1) the participant identifiers are received;

3  (2) the processor is caused to access the database; (3) the second participant identifier is processed;

4  (4) the communication is classified; (5) the routing message is produced; and (6) the

5  communication is established.

6      For example, when the representative claim requires "processing" the second participant

7  identifier to generate a new second participant identifier, it fails to specify any specific "processing"

8  technique.  *See 24/7 Customer, Inc. v. LivePerson, Inc.*, No. 15-cv-02897-JST, 2017 WL 2311272,

9  at *4 (N.D. Cal. May 25, 2017) (abstract claims did not specify "the technology that should be used

10  to perform the comparison, or even how the profile information should be analyzed to achieve the

11  proposed solution"); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir.

12  2015) (where a claim "contains no restrictions on how the result is accomplished," but rather is

13  directed to the abstract idea itself, the claim is not directed to patent-eligible subject matter).

14  Although the ***specification*** describes how, in one embodiment, the callee's identifier is reformatted

15  if it corresponds to a field in the caller's profile, the ***claim*** does not recite such detail and does not

16  identify the data to be processed or the analysis to be performed.  *See* '002 patent at 20:34-48,

17  22:25-31; *TDE Petroleum Data Sols., Inc., v. AKM Enter., Inc.*, 657 F. App'x. 991, 993 (Fed. Cir.

18  2016) ("While the specification arguably provides specific embodiments for the [claimed] step …

19  [the claim] recites none of those details.").

20      The representative claim shares many of the same steps as those held invalid in *BroadSoft,*

21  *Inc. v. CallWave Communications, LLC*.  282 F. Supp. 3d 771, 781 (D. Del. 2017).  Like the claims

22  in *BroadSoft*, the representative claim here does not seek to address "a problem specific to

23  telephony technology," but rather only uses previously known technology to perform purely

24  functional steps.  *Id*. at 781.  The court in *BroadSoft* found that the claims were directed to an

25  abstract idea because "known telephony technology elements perform[ed] the routine functions of

26  accessing stored information and directing the call" in accordance with those stored instructions:

27  "receiving at a call processing system a call from a caller," "cross-referencing the telephone address

28  dialed by the caller with a database in the call processing system," "accessing the database record

for the subscriber," and connecting the call based on a determination made about information about the call participants. *Id*. at 780-81.

Rather than detailing an improvement to computer technology, the representative claim invokes generic technology such as "processors," "controllers," and the Internet as tools to apply the basic process of making call routing determinations.  For example, the claims recite "processing" the identifier "via the at least one processor based on at least one attribute," "classifying the communication, via the at least one processor" if a "first network criterion is met," and "producing via the at least one processor a routing message."  *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) ("The specification does not describe a new telephone, a new server, or a new physical combination of the two [and] the specification fails to provide any technical details for the tangible components, but instead predominately describes the system and methods in purely functional terms.").

Unlike the claims in *Enfish*—which recited "a specific type of data structure designed to improve the way a computer stores and retrieves data in memory"—the representative claim does not assert a specific improvement in computer capabilities.  *See* 822 F.3d at 1339.  And as was the case in *Twilio, Inc. v. Telesign Corp.*, "[c]omputers and generic networking components are merely invoked as tools to carry out this abstract process; there is nothing about [the representative claim] that improves the functioning of the computers or networking components themselves." 249 F. Supp. 3d 1123, 1156 (N.D. Cal. 2017) (finding ineligible claims directed to enabling multi-modal communication by looking up and selecting a communication provider associated with a communication destination).  Therefore, the representative claim is directed to an abstract idea under the first step of *Alice*.

## C.    Under *Alice* Step Two, The Claims Lack An Inventive Concept.

Because the representative claim is directed to the abstract idea of ***using participant information to determine where to route a communication***, the claims are invalid unless they embody an "inventive concept" under an *Alice* step two.  *Alice*, 573 U.S. at 217-18.  That is not the case here.  The recited limitations, whether considered individually or as an ordered combination,

do not amount to more than the abstract idea itself.  The claimed steps consist of well-known, routine, and conventional activities, which cannot supply an inventive concept.

**1.      Considered Individually, The Elements Of The Representative Claim Do Not Include An Inventive Concept.**

In the context of computer-implemented inventions, the Federal Circuit has made clear that "for the role of the computer to be deemed meaningful in the context of [*Alice* step two] analysis, it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'"  *Content Extraction*, 776 F.3d at 1347-48 (quoting *Alice*, 573 U.S. at 225).  For example, the Federal Circuit rejected the claims in *Electric Power Group* at step two because "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information."  830 F.3d at 1355.  The Federal Circuit rejected the invocation of "computers and networks that are not even arguably inventive" as insufficient to provide an inventive concept.  *Id.*

Taken separately, each element of the representative claim in this case pertains to purely conventional components and activity.  As the specification explains, the representative claim implements a "communication system" using "conventional internet services," and known IP switches for enabling communications between IP networks and the public telephone network.  '002 patent at 13:32-35; *see id.* at 1:30-36.  Neither the claims nor the specification identifies any components used in the claimed routing determination as anything but generic and conventional.

For example, the representative claim requires a generic communication device ("a first participant device operable to establish a communication using the system to a second participant device"), a generic user profile with generic "attributes" ("a first participant profile comprising one or more attributes associated with the first participant"), and a generic processor ("a processor operably configured to execute program code stored in at least one memory").  Similarly, the specification demonstrates that terms such as "controller," "processor," "database," "user profile," and the "routing message" are recited generically.  *See, e.g.*, *id.* at 14:51-58, Figure 1 (depicting the "database" as a box, adding only that it stores information and can be accessed); *id.* at 21:47-51,

21:61-65 (referring to a "generic routing message" and "an example of a routing message . . . is shown generally"); *id.* at 18:40-52, Fig. 9 ("[m]ore generally, dialing profiles represent calling attributes of respective subscribers" and "an exemplary data structure for a dialing profile is shown generally at [block] 253"); *Alice*, 573 U.S. at 226 ("Nearly every computer will include a 'communications controller' and a 'data storage unit' capable of performing the basic calculation, storage, and transmission functions required by the method claims."). The networks used in the claimed process are similarly generic, as the claim recites receiving data "over an Internet protocol (IP) network" while the communication is routed to an "Internet address" associated with either the second device or to "a gateway to an external network." These are all generic characterizations of the components of conventional telephony systems. *See, e.g.*, *Twilio*, 249 F. Supp. 3d at 1160.

The inventive concept analysis does not change where the patentee has limited an abstract idea to a specific field of use. *Bilski*, 561 U.S. at 612 ("[L]imiting an abstract idea to one field of use . . . [does] not make the concept patentable."); *SAP Am.*, 898 F.3d at 1169 ("[N]arrow embodiments of ineligible matter . . . are still ineligible.") (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 88-89 (2012)). Here, the claims cannot become patent eligible merely because they may limit the use of the abstract idea to IP communications or to voice-over-IP products. *See Symantec*, 838 F.3d at 1320 (invalidating claims even though they required a telephone server, which "merely provides a 'generic environment' in which to carry out the well-known and abstract idea").

### 2. Considered As An Ordered Combination, The Elements Of The Representative Claim Do Not Include An Inventive Concept.

Claims directed to abstract ideas in which no individual limitation provides an inventive concept might be saved if they recite a "non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). However, "a conventional ordering of steps . . . with conventional technology to achieve its desired result" cannot supply an inventive concept. *Two-Way Media*, 874 F.3d at 1339. VoIP-Pal's claims fall into the latter category.

-18-

Collectively, the representative claim's steps specify using conventional telephone-routing components in a conventional series of activities:  first, data is retrieved; then, the data is analyzed according to rules; and finally, a determination is made based on that analysis.  Such an ordering follows from and is inherent to—*i.e.*, not an inventive concept for applying—the abstract idea of determining where to route an incoming communication.  *See, e.g.*, *Two-Way Media*, 874 F.3d at 1339 ("The claim uses a conventional ordering of steps—first processing the data, then routing it, controlling it, and monitoring its reception . . . ."); *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 993 (Fed. Cir. 2014) ("As in *Mayo,* the 'ordered combination adds nothing' because it follows from the underlying idea of categorical information storage" (citing *Mayo*, 566 U.S. at 79)).  Therefore, an inventive concept does not exist in the particular ordering of VoIP-Pal's claimed process.  *See Audatex North Am., Inc. v. Mitchell Int'l, Inc.*, 703 F. App'x. 986, 990 (Fed. Cir. 2017) (finding no inventive concept where claimed components were known and not recited in a manner that produced "a result that overrides the routine and conventional" use of those known components) (quoting *DDR Holdings*, *LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014)).

Thus, the representative claim fails *Alice* step two and is ineligible under Section 101.

### D. No Additional Limitations In The Other Asserted Claims Impart Subject-Matter Eligibility.

Turning to the remaining asserted claims, none contains an additional limitation that confers subject-matter eligibility.  While the other claims recite further limitations beyond those in the representative claim, they all remain directed to the same abstract idea of **using participant information to determine where to route a communication.**  Because no claim's focus departs meaningfully from the abstract idea or adds an inventive concept—as explained below—all of the asserted claims are invalid for lack of patent-eligible subject matter.

Although some of the asserted claims recite an apparatus, system, or computer-readable medium, they are no less abstract than the representative method claim.  Even when embodied by physical components, the asserted claims are all drawn to the same underlying putative invention— a method for determining where to route calls, which remains a mental process.  *See Alice*, 573

1    U.S. at 226 (concluding that "the system claims are no different from the method claims in

2    substance"); *CyberSource*, 654 F.3d at 1374 ("Regardless of what statutory category . . . a claim's

3    language is crafted to literally invoke, we look to the underlying invention for patent-eligibility

4    purposes.").

5    Some of the asserted claims contain the additional limitation of blocking the communication

6    when certain criteria are met.[6]   However expressed, that limitation does not shift the focus of the

7    claims away from the abstract idea of determining where to route a communication because a

8    determination of whether to route a communication at all is implicit in the determination of where

9    to route the communication.  Even if the blocking limitations changed the "character of the claims

10   as a whole," those claims would at most be directed to a closely related abstract idea:  using

11   participant information to determine *whether* to route a communication.  *See, e.g.*, *Intellectual*

12   *Ventures I LLC v. AT&T Mobility LLC*, 235 F. Supp. 3d 577, 594 (D. Del. 2016) ("Moreover, as

13   Defendants note, each step in claim 1—receiving, screening, and then forwarding or blocking a

14   message based on predetermined criteria—could be analogously performed by a human, instead of

15   by a computer." (citing *Bascom*, 827 F.3d at 1348 ("[F]iltering content is an abstract idea because

16   it is a longstanding, well-known method of organizing human behavior, similar to concepts

17   previously found to be abstract."))); *Symantec*, 838 F.3d at 1317 (noting that standard corporate

18   mailroom practice included deleting correspondence based on its attributes).  Additionally, the

19   limitation related to blocking cannot impart an inventive concept because nothing in the claim

20   recites blocking methods that "involve more than performance of 'well-understood, routine, [and]

21   conventional activities previously known to the industry.'"  *Content Extraction*, 776 F.3d at 1347-

22   48 (alteration in original) (quoting *Alice*, 573 U.S. at 225).[7]

23   ───────────────

24   [6] This type of limitation related to blocking the communication appears in three varieties,
     though they can be treated the same for purposes of patent eligibility:  (1) Claims 6, 21, and 26 of

25   the '762 patent send an error message to the controller when the first participant's attributes meet
     a third network criterion; (2) Claim 14 of the '330 patent and claim 26 of the '002 patent block the

26   communication from being established if the second participant's database profile identifies the
     first participant identifier on its communication blocking information; and (3) Claim 12 of the '549

27   patent blocks communication to a third participant device based either on a first participant attribute
     or information associated with the third participant device.

28   [7] Claim 12 of the '549 patent also contains the limitation of determining whether to permit
     further connection to a third participant device.  But repeating an abstract idea—*e.g.*, for multiple

Certain asserted claims require additional steps to classify the communication, by comparing the second participant identifier to the first participant's attributes (claim 30 of the '762 patent and claim 4 of the '330 patent), searching the database for a second participant system registration (claims 6, 16, 21, 26, and 30 of the '762 patent and claim 9 and 24 of the '549 patent), or determining the second participant device's operative capabilities (claim 6 of the '549 patent). Such further processing of the participants' information in order to determine a routing destination does not change the *Alice* analysis because additional information-gathering and analysis steps are likewise abstract. *See, e.g.*, *Elec. Power Grp.*, 830 F.3d at 1354 (holding that claims directed to "a process of gathering and analyzing information of a specified content . . . and not any particular asserted inventive technology for performing those functions" are abstract); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (holding that adding one abstract idea to another "does not render the claim non-abstract"); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) (finding no inventive concept in "determining whether the user falls into one category or another").

The asserted claims that restrict which generic components carry out the abstract idea similarly lack an inventive concept. For example, claim 14 of the '330 patent requires the processor be operably configured to cause the communication to be established either over an IP network or, at least in part, over a circuit-switched network. Yet the specification admits that IP switches that enabled routing over either IP or circuit-switched networks were routine in the industry. *See* '002 patent at 1:30-34; *cf. Twilio,* 249 F. Supp. 3d at 1146 (finding abstract dependent claims that restricted the type of networks utilized for routing). Other claims in this category[8] also fail *Alice* step two because they recite no more than generic implementation. *Alice*, 573 U.S. at 212

---

devices—is still abstract. *See Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*, 161 F. Supp. 3d 325, 333–34 (D. Del. 2015) ("[P]erforming an abstract idea twice in a row is not a meaningful limitation."), *aff'd* 671 F. App'x 777 (Fed. Cir. 2016).

[8] Other claims include:  claim 29 of the '002 patent (selecting an Internet gateway among a plurality of gateways for routing external communications); claims 3, 4, 12, and 14 of the '330 patent (routing system communications to a node found in the second participant's user profile); and claims 2, 6, 9, 12, 17, and 24 of the '549 patent (causing the processor to access memory storing the first participant profile).

-21-

("[M]erely requiring generic computer implementation fails to transform that abstract idea into a patent-eligible invention.").

Because each of the asserted claims is directed to the same abstract idea of ***using participant information to determine where to route a communication***, and no dependent claim adds any inventive concept, all of the asserted claims are invalid for lack of subject-matter eligibility.

### E.   No Questions Of Fact Preclude A Finding Of Invalidity Under Section 101.

VoIP-Pal's Complaints against Apple and Amazon allege that the Asserted Patents represent "fundamental advancements to the art of internet protocol (IP) based communication, including improved functioning, routing and reliability for communications over the internet." (Apple ECF No. 1 ¶ 18; Amazon ECF No. 1 ¶ 21.)  However, none of the asserted claims recites limitations that address those alleged problems or solutions.  In *Symantec*, the Federal Circuit held that an alleged improvement must be found ***in the claims*** and its mechanism actually described, in order to transform a perceived abstract idea into an inventive concept.  *See* 838 F.3d at 1316.  Even if the specification provided technical details regarding those alleged improvements, the alleged improvements are not reflected in the asserted claims themselves, rendering the alleged improvements irrelevant to Section 101 analysis.  *See id.* at 1322 (reversing the district court's finding of patent eligibility for "relying on the technological details set forth in the patent's specification and not set forth in the claims to find an inventive concept"); *Synopsys*, 839 F.3d at 1149 ("The § 101 inquiry must focus on the language of the Asserted Claims themselves.").

As there is no outstanding question of fact, it is appropriate for the Court to dismiss these Complaints at the pleading stage because the claims do not recite eligible subject matter under 35 U.S.C. § 101 as a matter of law.  *See SAP*, 898 F. 3d at 1166 (resolving patent eligibility at the pleading stage is appropriate "where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law"); *Aatrix Software*, 890 F.3d at 1359 (recognizing the "absence of genuine dispute as to eligibility for the many claims that have been defended as involving an inventive concept based merely on the idea of using existing computers or the Internet to carry out conventional processes, with no alteration of computer functionality"); *Immersion*, 313 F. Supp. 3d at 1016 ("Where the court has a full

-22-

understanding of the basic character of the claimed subject matter, the question of patent eligibility may properly be resolved on the pleadings.") (citing *Content Extraction*, 776 F.3d at 1349).

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss with prejudice all of VoIP-Pal's claims regarding the '002, '549, '330, and '762 patents.


DATED:  February 15, 2019


_____*/s/ Peter C. Magic*_____  _____*/s/ Daniel T. Shvodian*_____
Peter C. Magic         Daniel T. Shvodian

DESMARAIS LLP        PERKINS COIE LLP
John M. Desmarais (SBN 320875)  James F. Valentine (SBN 149269)
jdesmarais@desmaraisllp.com   Daniel T. Shvodian (SBN 184576)
Ameet A. Modi        3150 Porter Drive
(*pro hac vice* application to be submitted) Palo Alto, CA 94304-1212
amodi@desmaraisllp.com    Telephone: (650) 838-4300
230 Park Avenue       Facsimile: (650) 838-4489
New York, NY 10169      JValentine@perkinscoie.com
Telephone: (212) 351-3400    DShvodian@perkinscoie.com
Facsimile: (212) 351-3401

              *Attorneys for Defendants Amazon.com, Inc.*
              *and Amazon Technologies, Inc.*

Peter C. Magic (SBN 278917)
pmagic@desmaraisllp.com
101 California Street, Suite 3070
San Francisco, CA 94111

*Attorneys for Defendant Apple Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 15, 2019, a true and correct copy of the foregoing was served on all interested parties via electronic mail pursuant to Civil Local Rule 5-1(h).

*/s/ Peter C. Magic*
Peter C. Magic