**MALEK MOSS PLLC**
Kevin N. Malek (*pro hac vice*)
340 Madison Avenue, FL 19
New York, New York 10173
(212) 812-1491
kevin.malek@malekmoss.com

**CARLSON & MESSER LLP**
David Kaminski
 kaminskid@cmtlaw.com
J. Grace Felipe
 felipeg@cmtlaw.com
5901 W. Century Boulevard
Suite 1200
Los Angeles, California 90045
Tel: (310) 242-2200
Fax: (310) 242-2222

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**(SAN JOSE DIVISION)**

| | |
|---|---|
| VOIP-PAL.COM, INC.,<br><br>   *Plaintiff*,<br><br> v.<br><br>APPLE, INC.,<br><br>   *Defendant*. | Case No. 5:18-cv-06216-LHK<br><br>**VOIP-PAL'S REPLY CLAIM CONSTRUCTION BRIEF** |

| | |
|---|---|
| VOIP-PAL.COM, INC., | Case No. 5:18-cv-07020-LHK |
| *Plaintiff*, | |
| v. | |
| AMAZON.COM, INC. and AMAZON TECHNOLOGIES, INC., | |
| *Defendant*. | |

**TABLE OF CONTENTS**

**CLAIM TERMS FOR CONSTRUCTION**

I. ......... "routing message" ('762 patent claims 1, 21, 25; '330 patent claims 1, 12; '002 patent claims 1, 12, 22; '549 patent claims 1, 2, 12, 17, 18) ........................................... 1

II. ........ "internet address" ('762 patent claims 1, 21, 25; '330 patent claims 1, 12; '002 patent claims 1, 12, 22; '549 patent claims 1, 2, 12, 17, 18) ........................................... 2

III. ....... "call controller" ('762 patent claim 6) .............................................................................. 4

IV. ....... "network external to the system"/ "external network" ('762 patent claims 1, 21, 25; '330 patent claims 1, 12, 13; '002 patent claims 1, 12, 29; '549 patent claims 1, 6, 8, 17, 24) ........................................................................................................ 6

V. ........ "participant profile" / "user profile" ('762 patent claims 1, 21, 25; '330 patent claims 1, 4, 12; '549 patent claims 1, 17; '002 patent claims 1, 12, 22).......................... 8

VI. ....... "attribute" ('762 patent claims 1, 2, 21, 25, 26, 30; '330 patent claims 1, 4, 12; '002 patent claims 1, 12; '549 patent claims 1, 11, 12, 17)................................................ 9

VII. ..... "processing the second participant identifier" ('762 patent claim 1; '002 patent claim 1; '549 patent claim 1) .............................................................................. 10

VIII. .. "the classifying the communication is based on the causing the at least one processor to access the at least one database to search for the user profile for the second participant" ('330 patent claim 4) ................................................................. 11

# TABLE OF AUTHORITIES

**CASES**

*Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009) .......................................... 4, 5

*Central Admixture Pharm. Services, Inc. v. Advanced Cardiac Sol'ns, P.C.*, 482 F.3d 1347, 1355 (Fed. Cir. 2007) ................................................................................................................ 10

*Linear Tech. Corp. v. Int'l Trade Com'n*, 566 F.3d 1049, 1059-60 (Fed. Cir. 2009) .................... 12

*Nautilus v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014) ................................................ 1

*O2 Micro Int'l Ltd.*, 521 F.3d at 1362 ........................................................................................... 13

*Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1322-33 (Fed. Cir. 2003) ............................ 12

*Pfizer v. Teva Pharm.*, 429 F.3d 1364, 1374 (Fed. Cir. 2005) ........................................................ 5

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ................................................. 8, 11

*U.S. Surgical Corp.*, 103 F.3d at 1568 .......................................................................................... 12

*Voda v. Cordis Corp.*, 536 F.3d 1311, 1320 (Fed. Cir. 2008) ........................................................ 4

Defendants violate the most fundamental principles of claim construction in proposing narrow constructions that incorporate superfluous limitations and/or that are tied to specific embodiments where the record does not support importing such limitations into the claims. In other cases, Defendants make indefiniteness arguments that rely upon contrived vagueness or ambiguity arguments. None of Defendants' arguments are supported by any testimony of any skilled artisan regarding whether or how a skilled artisan could or would construe the claims. It is all just attorney argument. Defendants' arguments are wholly deficient and do not prove that any of the claims of the Patents-in-Suit are invalid for indefiniteness. The reality is that Defendants ignore that "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). There is no proof in support of such a standard. Defendants' arguments and the conclusory opinions of its attorneys fall well short of this mark across the board.

### I.   "routing message" ('762 patent claims 1, 21, 25; '330 patent claims 1, 12; '002 patent claims 1, 12, 22; '549 patent claims 1, 2, 12, 17, 18)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| message to a call controller containing information related to the path of a communication within a network or between networks | Modified Construction: Plain and ordinary meaning (i.e., message to a call controller that specifies how and where to send a communication). |

Defendants concede that a routing message determines the path of the communication within a network or between networks. However, Defendants, without any basis or justification, seek to limit the content of a routing message, proposing a construction of routing message that specifies "how" to send a communication and "where" to send a communication. Not only does Defendants' construction improperly incorporate additional limitations into the claim; but Defendants' proposed construction improperly ignores the presence of other relevant limitations already present in each applicable claim that render Defendants' proposal entirely redundant.

1  Accordingly, the additional limitations that Defendants propose for construction of the term
2  "routing message" do not need to be incorporated.
3  In support of their argument, Defendants ironically assert that the term "routing message"
4  does not need construction because routing and message are understandable. Plaintiff does not
5  disagree that the term is susceptible to an easy understanding. However, that does not justify the
6  incorporation of additional limitations into the claim that unnecessarily narrow the scope of the
7  claim term. Separately, Defendants also propose that routing message means "a message about
8  routing." *See* Responsive Brief at p. 14. That too sounds acceptable to Plaintiff. Indeed, Defendants
9  appear to contradict their own argument that the claim term must specify how and where a message
10 is routed when conceding that a routing message "has the information sufficient to determine where
11 a communication will be sent." *Id.* Indeed, Defendants' own admissions contradict their assertion
12 that the routing message must specify how and where and not that a routing message merely has
13 information sufficient to identify the path of the communication. Next, Defendants argue that a
14 routing message "necessarily specifies" the component that will carry the call. *See* Responsive Brief
15 at p. 15. This is both wrong and contradicted by Defendants' earlier arguments.
16 The intrinsic record is consistent with VoIP-Pal's construction. For example, the
17 specification identifies several examples of routing messages, which are each a message containing
18 information for a call controller regarding the path for a communication to take over networks and
19 nothing more. *See, e.g.*, '762 Patent at col. 1 l. 57 – col. 2 l. 5, col. 3, ll. 1-7, 14-25, 31-38, 45-53,
20 col. 3 l. 61 – col. 4 l. 10, col. 5 ll. 18-25, 30-35, 42-49, 50-56, col. 6 ll. 15-46, col. 11 ll. 45-50, col.
21 12 ll. 1-4, 19-21, col. 14 l. 65 – col. 15 l. 9, col. 18 ll. 19-25, col. 21 ll. 13-36, 49-67, col. 22 ll. 1-
22 4, col. 25 ll. 20-24. Thus, VoIP-Pal's construction should be adopted.

**II.     "internet address" ('762 patent claims 1, 21, 25; '330 patent claims 1, 12; '002 patent claims 1, 12, 22; '549 patent claims 1, 2, 12, 17, 18)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| an address of a network element used in Internet Protocol communications | Public IP address |

The dispute between VoIP-Pal's proposed construction and Defendants' proposed construction is whether internet address must be "public" (Defendants' proposal) or whether it can public or private (Plaintiff's proposal). While Defendants' argue that internet addresses must be public; they undermine their own argument by citing to the specification of the Patents-in-Suit for the proposition that an IP network includes "a private network at a large company" and that "a private IP address allows devices in the same private network to message one another." *See* Responsive Brief at p. 24.  For example, it is clear that a claim element that calls for "an internet address of a communication system node" can be part of a private network. Therefore, Defendants' assertion that internet address must be limited to public IP addresses fails. Separately, Defendants' proposal excludes preferred embodiments that use private networks between supernodes.  For example, the Patents-in-Suit describe a link between supernodes. *See* '762 Patent at Fig. 1 link 17. This link is not shown as traversing the public Internet and the specification clarifies that it could be a private network. *See* '330 Patent at 27:58.

Not only is Defendants' proposed construction controverted by the specification of the Patents-in-Suit, but it also improperly limits the claims. The specification uses the term internet address in both public and private contexts. *See,* e.g., '002 Patent at col. 37 l. 51 – col. 38 l. 2, col. 39, ll. 51-63 ("system routing message identifying an Internet address associated with the second participant device"); '002 Patent at col. 37 l. 51– col. 38 l. 2 (the production of a "network routing message identifying an Internet address associated with a gateway to an external network"); '002 Patent, col. 38, ll. 53-65 (describing that "each respective routing message identifying an Internet address associated with a recipient device or identifying an Internet address associated with a

gateway to an external network").

Defendants' have not cited any evidence that supports limitation of the term internet address to that of "Public IP address". To the extent that Defendants maintain an argument that the Patents-in-Suit disclaim private internet addresses, Defendants have not cited any evidence that would justify such a restrictive construction. *See*, *e.g.*, *Voda v. Cordis Corp.*, 536 F.3d 1311, 1320 (Fed. Cir. 2008) (citations omitted) (disclaimers must be clear and unequivocal). Even if a patent specification describes only a single embodiment, claim language should not be limited to that embodiment "unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009) (citation omitted). In this case, the language from the Patents-in-Suit upon which Defendants rely do not constitute a clear disavowal of the ordinary claim scope. Defendants cannot show disclaimer under Federal Circuit law. The "internet address" language is described in the Patents-in-Suit as encompassing other IP based addresses and not just public ones. *See, e.g.*, '002 Patent at col. 37 l. 51 – col. 38 l. 2, col. 38 l. 33 – col. 39 l. 6, col. 38 ll. 37 – 65, col. 39 ll. 51-63, col. 39 l. 64 – col. 40 l. 16, col. 41 ll. 16 - 23, col. 42 ll. 13-31; *see also* '330 Patent at col. 13 l. 55 – col. 14 l. 50, col. 21 ll. 24-60, col. 27 ll. 33-41, col. 27 l. 16 62 – col. 28 l. 46. Accordingly, "internet address" encompasses more than just Public IP addresses and VoIP-Pal's proposed constructions should be adopted.

### III.   "call controller" ('762 patent claim 6)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| apparatus that establishes a communication within a network or between networks | Original Construction: an entity separate from the participant devices<br><br>Modified Construction: an apparatus separate from the participant devices that establishes a communication within a network or between networks |

Recognizing the fatal defect in their original construction, Defendants now propose an alternative construction that is close to Plaintiff's proposal but for the requirement that the "call controller" be an apparatus or entity "separate from the participant devices". There is no basis for the inclusion of superfluous limitations, such as "separate from the participant devices" into the claim term. A call controller is a call controller. There is nothing about that physical component that identifies where the call controller resides separate from other components or "participant devices" in a system. To substantiate their unjustified construction, Defendants cite to a preferred embodiment described in the Patents-in-Suit, showing that IP phones are distinct from the supernode.

However, even if a patent specification describes only a single embodiment, claim language should not be limited to that embodiment "unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009) (citation omitted). In this case, the description of the embodiment from the Patents-in-Suit upon which Defendants rely does not constitute a clear disavowal of the ordinary claim scope. Defendants also cannot show disclaimer under Federal Circuit law. In *Pfizer v. Teva Pharm.*, 429 F.3d 1364, 1374 (Fed. Cir. 2005), for example, the Federal Circuit rejected the assertion that the claim term "saccharides" must mean "sugars" even though the phrase "saccharides (i.e. sugars)" appeared in the specification. The court reasoned that, "when read in the context of the entire [] patent, the reference to 'saccharides (i.e., sugars)' does not constitute a definition of 'saccharides.'" *Id*. at 1375. The same is true here. Defendants proposal also unnecessarily imports additional limitations into the claim. A call controller is a tangible and physical component and where it sits in a system is irrelevant to its understanding and construction. Accordingly, "call controller" encompasses more than just components or "entities" that are separate from participant devices and VoIP-Pal's proposed

constructions should be adopted.

**IV.     "network external to the system"/ "external network" ('762 patent claims 1, 21, 25; '330 patent claims 1, 12, 13; '002 patent claims 1, 12, 29; '549 patent claims 1, 6, 8, 17, 24)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| a network that is distinct from and not controlled by the entity that controls the communication system | Indefinite |

**"system" ('762 patent claims 1, 14, 21, 25, 26, 30; '330 patent claims 1, 3, 12, 13; '002 patent claims 1, 12, 22; '549 patent claims 1, 2, 6, 9, 17, 18)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning, e.g., a set of things working together | Indefinite |

Defendants expend significant effort in arguing that VoIP-Pal's definition of system is indefinite. Fatally, Defendants confuse breadth with indefiniteness. VoIP-Pal's construction merely respects the fact that "system" is a general term, and not particularly limiting in and of itself. The term "system" is meaningfully limited by the other elements of the claim.  The fact that system is a general term and can be applied in different ways does not make the term indefinite.  The specification makes clear that the claims are directed to a communication system, operated and controlled, in some embodiments, by a single entity, based on the operation of the supernodes that work together, and that this system is distinct from the Public Switched Telephone Network.

VoIP-Pal's proposed construction is not "vague" as asserted by Defendants. *See* Responsive Brief at p. 7. System is a general term that can be applied to the various elements that are embodied in other aspects of the claim(s). Defendants' basic argument is fundamentally flawed. Indeed, Defendants argue that because VoIP-Pal's definition of "system" could also apply to the

universe of communication elements, then there can never be an external network. This is a non-sequitur. VoIP-Pal's definition of system can also be applied consistent with external network. Defendants' argument ignores that the definition of "external network" puts limits on what the system can be.  Defendants' argument suggests, incorrectly, that if one defines "widget" and somewhere else in the claim the widget is coupled to a "sprocket", then the fact that the definition of widget includes widgets not coupled to sprockets means it must be wrong.  This is redundant claim construction. VoIP-Pal's proposed definition of system does not need to incorporate all other claim elements that restrict what a system can be.  The fact is that when system and external network are interpreted together, system is definite and understandable.  It can be any system that satisfies the rest of the claim elements. Defendants repeat this flawed reasoning in saying that because the system includes the external network, the external network cannot be distinct from the system. Responsive Brief at p. 8. But the system obviously does not include the external network and VoIP-Pal's definition of system does not force one to include the external network. The fact that the system works with the external system does not automatically make it part of the system. Defendants suggest that because one could apply VoIP-Pal's definition of system inconsistently, then it must be wrong.  One can also apply VoIP-Pal's definition consistent with the rest of the claim. Defendants allege that because a communication system includes the Internet, then it cannot be controlled by the same entity. *See* Responsive Brief at pp. 8-9.  This argument fails because the argument neglects to recognize the concept of layers in communication protocols.  End points in a communication system (e.g. phones and servers) communicate with each other and are controlled by the same entity, while the actual equipment that the information traverses may not be operated by that same entity.  This is how layered communication works.

The common ordinary meaning of this claim term dictates a construction that is entirely definite here. Indeed, the term uses common words in order to specify a particular network's

relationship to the claimed system. *See, e.g.*, '762 Patent col. 38 ll. 3-10; *see also, e.g.*, '002 Patent col. 37 ll. 50-54. Defendants present absolutely no evidence that one of skill in the art could not understand the claims term(s) or the ordinary words used therein.

Separately, the "external network" is external to the system, i.e., not part of the elements that form the system or the set of components or elements that are working together. There is nothing mysterious or highly technical about that. Those are common words used in their ordinary context. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). The claim term uses easily understood non-technical words such as "external" and "network". Accordingly, the claim term should be construed according to its common and ordinary meaning.

## V. "participant profile" / "user profile" ('762 patent claims 1, 21, 25; '330 patent claims 1, 4, 12; '549 patent claims 1, 17; '002 patent claims 1, 12, 22)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning, i.e., information or data specific to the respective user/participant | Plain and ordinary meaning (i.e. a record specific to the respective [user/participant]) |

Defendants seek to improperly limit this claim term to a specific implementation of the preferred embodiment. Defendants attempt to import the words "a record", meaning a single database record, into the claim, when the claim does not use those words and does not require those words. Indeed, the use of databases is well known and the claim does not use the words "database record". At most, the claim term is directed to information about or a collection of attributes for a participant or user. Defendants contend that Plaintiff's definition is too broad because "nothing separates [profile] from an 'attribute'." Responsive Brief at p. 11. Defendants' assertion proves VoIP-Pal's point with respect to this construction. The claim says that the profile comprises one or more attributes. Therefore, it is clear from the plain language of the claim that a single attribute can also be a profile. Defendants assert that "any piece of 'information' could be a profile or an attribute

or both" and that they need to have different meanings. Responsive Brief at p. 11. Defendants ignore the rest of the claim language. The claim clearly shows that a profile is a collection of one or more attributes. Therefore, the terms do have different meanings and that provides the necessary and relevant limitations to the claim(s). To say that a profile is "one" record in a database is an extreme limitation that cannot be justified based upon the claim language.

### VI. "attribute" ('762 patent claims 1, 2, 21, 25, 26, 30; '330 patent claims 1, 4, 12; '002 patent claims 1, 12; '549 patent claims 1, 11, 12, 17)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning, i.e., characteristic or feature that is specific to or part of something or someone | *See* Defendants' Responsive Claim Construction Brief. ECF No. 94 at p. 4. |

Defendants' improperly narrow the term "attribute" by adding additional words regarding the modifier of the word attribute. But the word attribute does not require or allow modification. The word attribute is modified by the context in which the term is used in the claim(s). There is no need and no justification to add additional superfluous terms. There is nothing about the term "attribute" itself that requires the term to be limited to a respective user/participant. In fact, the term attribute – as used in the claims - is already limited by other words in the claim. For example, claim 1 of the '762 Patent contains the limitation "comprising one or more attributes associated with the first participant." *See* '762 Patent, col. 37 ll. 52-54 (emphasis added). Therefore, that claim already delineates the person or thing to whom the term "attribute" refers. Accordingly, Defendants' original proposal and Defendants' modified proposal would be redundant with words that are already present in the claim itself – and with the term "associated with the first participant" in that example. Defendants cannot justify this narrowing of the word "attribute", where those words are commonly understood to encompass application to anything identified in the claim. Thus, this term should not be improperly narrowed and should be given its plain and ordinary meaning such that the term "attribute" applies to anything thing or person already identified in the respective claim, as proposed by VoIP-Pal.

**VII. "processing the second participant identifier" ('762 patent claim 1; '002 patent claim 1; '549 patent claim 1)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| plain and ordinary meaning, i.e., taking a series of actions or operations with respect to the second participant identifier | formatting the second participant identifier |

"Processing the second participant identifier" should also be given its plain and ordinary meaning. Defendants propose an overly restrictive construction that appears to conflate "processing" with "formatting." Indeed, Defendants' proposal is identical to the term to be construed except that it substitutes the claimed term "processing" for the word "formatting." Defendants' construction limits "processing" to just formatting. Defendants' proposed construction would rewrite the claim such that it no longer requires any processing other than formatting. Defendants attempt to justify the limitation of processing to formatting by citing Figure 8B of the Patents-in-Suit in an attempt to illustrate that every example of processing is formatting. However, this is incorrect because the processing step of the claim(s) can also include generating a new callee ID or a new callee ID. *See, e.g.*, Figure 8B at 269, 279 and 408. As shown in Figure 8B, the output can be a new callee ID (279) or a new callee ID (408). Collectively, this cannot be referred to as formatting the new callee ID (279) is based on a database lookup and not on any formatting. The error in Defendants' argument is that it presents a classic example of importing limitations from the preferred embodiment into the claim. Such a construction cannot be proper. *Central Admixture Pharm. Services, Inc. v. Advanced Cardiac Sol'ns, P.C.*, 482 F.3d 1347, 1355 (Fed. Cir. 2007) ("[c]laims mean precisely what they say"). There also has been no disclaimer here that would support Defendants' proposed construction, that improperly narrows the claims by limiting "processing" to formatting. This is improper and should be rejected.

Indeed, Defendants' proposal narrows the scope of these claim terms beyond their plain meanings and exclude embodiments from the specification. For example, "processing" may require some action other than formatting. Yet Defendants' proposal limits "processing" to "formatting."

For example, the Patents-in-Suit contemplate that the participant identifier can be processed to produce a new identifier. *See, e.g.*, '549 Patent col. 37 ll. 42 – 45 and '762 Patent col. 37 ll. 55 -58. But the claim language is not limited to formatting in order to accomplish that processing. And there has been no such disavowal of everything other than formatting. Defendants seek to limit the claims to embodiments, a construction that is contrary to Federal Circuit guidance. *See, e.g., Phillips*, 415 F.3d at 1314-17. When relying on the specification, "it is important to keep in mind that the purpose[] of the specification [is] to teach and enable those of skill in the art to make and use the invention." *Id*. at 1323. Thus, "although the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments." *Id*. That is precisely the error that Defendants are making. Therefore, Defendants' proposed construction should be rejected.

**VIII.     "the classifying the communication is based on the causing the at least one processor to access the at least one database to search for the user profile for the second participant" ('330 patent claim 4)**

| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
|---|---|
| plain and ordinary meaning, e.g., the step of: "classifying the communication" uses the result of the step of: "causing the at least one processor to access the at least one database to search for the user | Indefinite |

Defendants argue that this claim element makes no sense because it is based on causing access to the database rather than the result of the access to the database. Defendants are essentially importing a negative limitation into the claim that's not there: "the limitation says that the classifying is based on the causing of the search, not the result of the search." Responsive Brief at p. 10. This is wrong, the claim limitation does not say that it is not based on the result of the search, it is clearly based on both. In a sequence of causality, A results in B which results in C.  Such

importation violates a basic tenet of claim construction. *See Linear Tech. Corp. v. Int'l Trade Com'n*, 566 F.3d 1049, 1059-60 (Fed. Cir. 2009) (ITC erred in construction because there was "no basis in the patent specification for adding the negative limitation," and the "limitation should be accorded a scope commensurate with the . . . patent's specification"); *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1322-33 (Fed. Cir. 2003) (finding that district court erred in "incorporat[ing] into the claim language a novel negative limitation" because the "additional negative limitation finds no anchor in the explicit claim language" and there was no "express disclaimer or independent lexicography in the written description that would justify adding that negative limitation").

To say that something that uses C is based on A is not illogical or inconsistent, and certainly not indefinite. One of skill reading this claim understands what it means. Indeed, the term merely sets forth how the communications is classified, that is:

- the processor accesses at least one database;

- a user profile for a participant is sought.

While patents are written for persons of skill in the art, in many cases the ordinary meaning of claim language as understood by such a person may be readily apparent even to lay judges, "and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips,* 415 F.3d at 1314. Here, no construction is needed because the claim terms are commonly understood words used in the context of the patent in accordance with their ordinary meaning. *See U.S. Surgical Corp.*, 103 F.3d at 1568 ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy."). Indeed, the claim term uses easily understood non-technical words such as "classifying", "causing", "processor", "access",

"database" and "search". These are not so complicated that a jury would benefit from or need construction. *See also O2 Micro Int'l Ltd.*, 521 F.3d at 1362 ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims."). Accordingly, the claim term should be construed according to its common and ordinary meaning.

| | |
|---|---|
| Dated:  August 9, 2019 | MALEK MOSS PLLC |
| | /s/ Kevin N. Malek |
| | _____ |
| | Kevin N. Malek (*pro hac vice*) |
| | 340 Madison Avenue, FL 19 |
| | New York, New York 10173 |
| | (212) 812-1491 |
| | kevin.malek@malekmoss.com |
| | |
| | CARLSON & MESSER LLP |
| | David Kaminski |
| |   kaminskid@cmtlaw.com |
| | J. Grace Felipe |
| |   felipeg@cmtlaw.com |
| | 5901 W. Century Boulevard |
| | Suite 1200 |
| | Los Angeles, California 90045 |
| | Tel: (310) 242-2200 |
| | Fax: (310) 242-2222 |
| | |
| | *Attorneys for Plaintiff* |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing **VOIP-PAL'S REPLY CLAIM CONSTRUCTION BRIEF** has been served on August 9, 2019, to all counsel for Defendant through the Court's CM/ECF system.

    /s/ Kevin N. Malek