# EXHIBIT A

MALEK MOSS PLLC
Kevin N. Malek (*pro hac vice*)
340 Madison Avenue, FL 19
New York, New York 10173
(212) 812-1491
kevin.malek@malekmoss.com

CARLSON & MESSER LLP
David Kaminski
  kaminskid@cmtlaw.com
J. Grace Felipe
  felipeg@cmtlaw.com
5901 W. Century Boulevard
Suite 1200
Los Angeles, California 90045
Tel: (310) 242-2200
Fax: (310) 242-2222

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**(SAN JOSE DIVISION)**

| | |
|---|---|
| VOIP-PAL.COM, INC.,<br><br>   *Plaintiff*,<br><br> v.<br><br>APPLE, INC.,<br><br>   *Defendant*. | Case No. 18-cv-06216-LHK<br><br>**VOIP-PAL'S SUPPLEMENTAL BRIEF IN FURTHER OPPOSITION TO DEFENDANTS' CONDOLIDATED MOTION TO DISMISS PLAINTIFF'S COMPLAINT: MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: September 5, 2019<br>Time: 1:30 p.m.<br>Courtroom: 8 – 4th Floor<br>Judge Lucy H. Koh |
| VOIP-PAL.COM, INC.,<br><br>   *Plaintiff*,<br><br> v.<br><br>AMAZON.COM, INC. and AMAZON TECHNOLOGIES, INC.,<br><br>   *Defendants*. | Case No. 18-cv-07020-LHK |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................... 3

    A. Defendant Apple's Arguments in its IPR Petitions Are Material to the Court's Resolution of the Pending Motion to Dismiss and Contradict Defendants' Arguments Made Therein. ................................................................................................................. 3

    B. Defendants' Reply mischaracterizes the "inventive concept" in BASCOM in a manner that obscures BASCOM's relevance to Voip-Pal's claims. ............................................ 9

    C. The Reply's improper and misleading citation of extrinsic material cannot be answered by Voip-Pal within the confines of the Motion to Dismiss. ....................................... 11

III. CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

**CASES**

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC,* 827 F.3d 1341, 1344 (Fed. Cir. 2016) .................................................................................................................................. 9, 10

*In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009) ........................................................................ 7

*Intellectual Ventures I LLC v. Symantec Corp.*, 838 F. 3D 1307, 1321 (Fed. Cir. 2016) .............. 10

*MyMail, Ltd. v. ooVoo, LLC*, No. 18-1758, 2019 WL 3850614 (Fed. Cir. Aug. 16, 2019) ............. 2

**STATUTES**

35 U.S.C. § 101 ........................................................................................................................ 2, 10

35 U.S.C. § 102 .............................................................................................................................. 5

35 U.S.C. § 103 ........................................................................................................................... 5, 7

**REGULATIONS**

§102 ................................................................................................................................................ 7

37 C.F.R. § 42.100 ...................................................................................................................... 6, 7

## I. INTRODUCTION

VoIP-Pal hereby submits this Supplemental Brief in Opposition to Defendants' Consolidated Motion to Dismiss. In its Opposition Brief (the "Opposition Brief" at ECF No. 91 (Case No. 5:18-cv-06216) and ECF No. 69 (Case No. 5:18-cv-07020)), VoIP-Pal argued that Defendants' Joint Consolidated Motion(s) to Dismiss (the "Motion to Dismiss" at ECF No. 89 (Case No. 5:18-cv-06216) and ECF No. 67 (Case No. 5:18-cv-07020)) must be denied for at least the following reasons: (1) the asserted claims are directed to an inventive concept that renders the claims patent eligible and separately that (2) the Motion to Dismiss is premature at the Rule 12(b)(6) stage because decision on the Motion requires resolution of disputed issues of fact and claim construction issues.

Voip-Pal has discovered evidence relevant to the resolution of the Motion to Dismiss. On May 13, 2019, Defendant Apple filed four petitions for *Inter Partes Review* in the United States Patent and Trademark Office (the "IPR Petitions" attached hereto Declaration of Kevin N. Malek ("Malek Decl.) at Exhibits 1, 2, 3 and 4), challenging the validity of the Patents-in-Suit.[1] On June 5, 2019, Defendants subsequently filed their Motion to Dismiss and filed their Reply in Support of the Motion to Dismiss on June 26, 2019 (the "Reply" at ECF No. 92 (Case No. 5:18-cv-06216) and ECF No. 70 (Case No. 5:18-cv-07020)). In preparing its responses to Defendant Apple's IPR Petitions, which responses were due and filed one business day ago on August 23, 2019, VoIP-Pal discovered that Defendant Apple took positions and made arguments therein with respect to its IPR Petitions that are inconsistent and contradictory to what Apple has argued to this Court in its Motion to Dismiss in this case as well as the Related Cases[2]. *See* Malek Decl. Exhibits 5, 6, 7 and 8 (attaching Patent Owner's Preliminary Responses to Defendant Apple's *IPR* Petitions). Even more significant is the fact that

---

[1] The four new IPR Petitions are: IPR Petition Nos. IPR2019-01003, IPR2019-01006, IPR2019-01008 and IPR2019-01009, filed against U.S. Patent Nos. 9,537,762 ("the '762 IPR"), 9,813,330 ("the '330 IPR"), 9,826,002 ("the '002 IPR") and 9,948,549 ("the '549 IPR"), respectively.

[2] The "Related Cases" are *VoIP-Pal.com, Inc. v. Cellco Partnership d/b/a Verizon Wireless*, Case No. 5:18-cv-06054-LHK (ECF No. 129), *VoIP-Pal.com, Inc. v. Twitter, Inc.*, Case No. 5:18-cv-04523-LHK, *VoIP-Pal.com, Inc. v. AT&T Corp.*, Case No. 5:18-cv-06177-LHK, and *VoIP-Pal.com, Inc. v. Apple, Inc.*, Case No. 5:18-cv-06217-LHK.

these contradictions are material to the Court's resolution of Defendants' Motion to Dismiss in that they identify issues of fact that are the subject of a genuine dispute and support VoIP-Pal's arguments that the asserted claims are directed to a patent eligible inventive concept. The inconsistent positioning taken by Defendant Apple in front of this Court versus the arguments Apple made in its *IPR* Petitions is so glaring that is can only be characterized as deliberately misleading. Apple's contradictory positions undermine the credibility of its arguments.

In summary, Defendant Apple argued throughout its Reply Brief, and in more limited form on its Motion to Dismiss, that VoIP-Pal's arguments regarding the "user-specific" features and benefits of the asserted claims do not save the claims from ineligibility because, according to Amazon and Apple, the claims do not expressly specify or require such "user-specific" features and benefits. Even more significant is that this Court relied on those arguments in dismissing the Related Cases under 35 U.S.C. § 101, a fact that Defendants highlight in urging dismissal of this action. Yet, in its *IPR* Petitions, Apple spun a completely different narrative—one that stands in stark contrast to the arguments that it continues to espouse before this Court. In its *IPR* Petitions, Apple cited prior art references and argued, cavalierly, that those references invalidate the asserted claims because they teach "user-specific" features and benefits. The arguments that Apple made in its IPR Petitions are a complete about-face from the arguments that Apple succeeded on in the Related Case and that Apple repeats in this case. In other words, in this case, Defendants argue that the asserted claims cannot be to an inventive concept because they do not include "user-specific" benefits within their scope; but in its *IPR* Petitions, Apple argues that prior art invalidates the same claims because that prior art teaches "user-specific" benefits.

Apple's contradictions highlight at least two critical issues to be resolved by this Court: (a) whether the asserted claims cover "user-specific" benefits that render the claims eligible under the *Alice* Step 2 "inventive concept" framework, and (b) whether genuine issues of fact underlying VoIP-Pal's and Defendants' §101 respective arguments preclude dismissal at the Rule 12(b)(6) stage. The

significance of Apple's divergence from its previous position is highlighted by the recent decision in *MyMail, Ltd. v. ooVoo, LLC*, No. 18-1758, 2019 WL 3850614 (Fed. Cir. Aug. 16, 2019), in which the CAFC ruled that "if the parties raise a claim construction dispute at the Rule 12(c) [or Rule 12(b)(6)] stage, the district court must either adopt the non-moving party's constructions or resolve the dispute to whatever extent is needed to conduct the §101 analysis". *See id*. at 11.

**II. ARGUMENT**

    **A. Defendant Apple's Arguments in its IPR Petitions Are Material to the Court's Resolution of the Pending Motion to Dismiss and Contradict Defendants' Arguments Made Therein.**

In connection with their Motion to Dismiss, Defendants argued extensively that the asserted claims do not mention, recite or require "user-specific calling", "user-specific features" or "user-specific handling". *See, e.g.,* Reply at 1:15, 6:22-23, 11:4-7; 11:16-12:7, 14:20-22. For example, in its Opposition Brief, VoIP-Pal asserted that the claims include an "inventive concept" embodied in **user-specific** calling, amongst other things, that is sufficient to transform any purported abstract idea into patent eligible subject matter at *Alice* Step 2. In response, Defendants argued that the asserted claims do not "mention," let alone "require," "user-specific" features. *See, e.g.* Reply at 1:15, 6:22-23, 11:4-7; 11:16-18, 14:21-22. Indeed, on Reply in support of their Motion to Dismiss, Defendants were effusive in their assertions that the claims are not directed to anything user-specific, arguing as follows (emphases added):

> But because the ***claims never require*** such "user-specific" features, VoIP-Pal's arguments fail to demonstrate an inventive concept. Reply at p. 1:14-16.

> \* \* \*

> First, the asserted ***claims never mention*** "user-specific handling" (or routing, classifying, etc.) of any communications. (citation omitted). Reply at p. 6:22-23.

> \* \* \*

> First, VoIP-Pal argues that providing "profile-based, user-specific access to communication routing integrated across the infrastructure of two distinct networks is unconventional"; but that argument fails because VoIP-Pal bases it on purported ***benefits not recited in the claims***. (citation omitted). Reply at p. 11:4-7.

3

\* \* \*

Furthermore, VoIP-Pal's reliance on the FAC cannot demonstrate an inventive concept because the cited paragraphs discuss features that are ***nowhere in the claims***—"user-specific handling," "transparent routing," "resiliency," and "user-specific" "communication blocking." (citation omitted). Reply at p. 11:16-18.

\* \* \*

Similarly, "processing" that generic information with the second participant identifier in an undefined way—contrary to VoIP-Pal's repeated attempts to label it as "user-specific" "evaluation"—occurs using generic computer components. (citation omitted). Reply at p. 14:20-22.

Put simply, Defendants adamantly rejected any notion that the claims "specify" that processing "must be 'specific' to a user" (Reply at 6:25 ("specific" in in quotation marks in the original)).

Against the backdrop of Defendants' persistent argument that the claims cannot possibly include anything "user-specific"—and this Court's adoption of that argument in the Related Cases—Defendant Apple, Inc., at the same time, sought *Inter Partes Review* of the Patents-in-Suit, taking entirely inconsistent positions before the United States Patent and Trademark Office's ("USPTO") Patent Trial and Appeal Board ("PTAB") from the position taken with this Court. For example, in preparing its responsive pleading to Defendant Apple's IPR Petitions—which responses were due and filed on August 23, 2019—Voip-Pal discovered the cavalier nature of the Defendant's arguments to this Court. Indeed, in connection with its IPR Petitions regarding the Patents-In-Suit,[3] Defendant Apple argued an entirely ***contradictory narrative*** to the PTAB from the one it argued to this Court, namely, that "***user-specific***" features of VoIP-Pal's claims ***are*** within the scope of claimed subject matter and are invalidated by proposed prior art that necessarily discloses the same "***user-specific***" features.

---

[3] Four new *Inter Partes* Review Petitions were filed, *viz.*: IPR2019-01008 filed against U.S. Patent No. 9,826,002 ("the '002 IPR"); IPR2019-01006 filed against U.S. Patent No. 9,813,330 ("the '330 IPR"); IPR2019-01009 filed against U.S. Patent No. 9,948,549 ("the '549 IPR"); and IPR2019-01003 filed against U.S. Patent No. 9,537,762 ("the '762 IPR")—all apparently filed on May 13, 2019.

In particular, Apple's four IPR Petitions—and their supporting expert declarations—expressly, repeatedly, and with particularity, explain *how* and *why* each of its cited prior art invalidates the asserted claims in part because the prior art discloses "***user-specific***" attributes, profiles, processing and/or infrastructure. Furthermore, Apple made such "user-specific" invalidity arguments even for the "representative claims" that Apple now argues to be abstract because they do not "mention" or "require" user-specific features or elements.[4] The following are a few relevant examples of how Defendant Apple characterized – in its IPR Petitions – the prior art as embracing "user-specific" features, thereby purportedly invalidating the subject claims under 35 U.S.C. § 102 and 35 U.S.C. § 103.[5]

(1) "Scott teaches that *each* user has a 'dialing plan' ***specific to that user***…" (*see* '762 IPR at 18; '549 IPR at 17; '002 IPR at 19; '330 IPR at 19-20); and Apple explains *why* this dialing plan "is therefore ***user-specific***"; (*see id.* (same page numbers of each Petition) (emphasis added));

(2) "It is this ***user-specific*** dialing plan that is accessed in the proposed combination of Chu[/]Scott" (*see* '762 IPR at 19; '549 IPR at 17; '002 IPR at 20; '330 IPR at 20) (emphasis added);

(3) "It is this ***user-specific infrastructure*** that supports incorporating Scott's ***user profile functionality*** into the Chu system" (*see* '549 IPR at 18; '002 IPR at 21);

(4) Chu/Scott allegedly teach "locat[ing] … at least one ***user-specific attribute***" (*see* '002 IPR at 35, 41)

(5) Chu/Scott/Hinchey teaches "processing a ***user-specific first participant attribute***… to determine whether a further communication… is allowed to proceed." (*see* '549 IPR at 45; *compare* similar arguments in *id*. at 55, 57)

(6) "Like the Chu/Scott combination discussed above, Hinchey teaches storing user parameters ("***attributes***") in a ***user-specific dial plan***" (*see* '762 IPR at 48; *see also* '549 IPR at 45);

---

[4] Some of VoIP-Pal's claims, in fact, expressly recite the term "user-specific": *e.g.*, *see* claims 11 and 12 of '549 Patent; claims 9 and 12 of '002 Patent.  However, in its IPR Petitions, Apple seems to have characterized *every* asserted claim, expressly or implicitly, as *requiring* user-specific features.

[5] To be clear, Voip-Pal does not agree with Apple's technical characterizations of the prior art cited in the IPR's.  Nevertheless, it is very telling that, as part of its explanation for why the cited prior art renders the claims-at-issue invalid, Apple goes to great lengths to explain that the prior art discloses "***user-specific***" attributes, profiles, infrastructure and processing and ***why*** this is so, as highlighted by the added emphasis in the quotations from Apple's IPR Petitions that follow *infra*.

5

(7) "Hinchey's 'call attributes'… are derived by consulting this **user specific** dial plan (i.e., the dial plan in effect)." (*see* '762 IPR at 50; '549 IPR at 47);

(8) "A POSITA would understand that this information would be stored in the same **user-specific** dial plan as Scott's user parameters, as this would allow for the incorporation of Hinchey's call-blocking features into the Chu/Scott system."; (*see* '762 IPR at 50; '549 IPR at 47); and

(9) "Hinchey teaches preventing communications from being established… based on **user-specific caller ("first participant") attributes**". (*See* '762 IPR at 51; '549 IPR at 48).

(10) "Chu/Scott teaches that the first participant profile identifies a plurality of **user-specific attributes** of the first participant.... The **attributes are user-specific** because they are entered by the user to identify the user's local calling area." (*see* '549 IPR at 55; *compare id.* at 57-58 (further alleging that the cited art discloses "**user-specific attribute[s]**")).

[emphasis added throughout]

Still further contradicting the arguments that Defendant Apple made to this Court, Apple's arguments in its petitions for *IPR* characterize *each* of its three cited prior art references (Chu, Scott, Hinchey) as disclosing "user-specific" features—*even when the cited art itself does not internally use this terminology*.

Apple's strong and repeated emphasis on the "user-specific" nature of the claims in the IPRs is inexplicable apart from Apple (and its expert) simply recognizing that the "attributes", "profiles" and processing recited in the claims is understood as being user-specific in nature. It is also notable that Apple expressly adopted its "user-specific" positioning and claim construction in the IPRs under the claim construction standard for a <u>district court</u> (as is now required in IPR's).  As Apple admitted in its *IPR* Petitions:

> A claim of a patent subject to IPR is construed "using the **same claim construction standard** that would be used to construe the claim in a **civil action** under 35 U.S.C. 282(b), including construing the claim in accordance with the **ordinary and customary meaning** of such claim as understood by a POSITA and the prosecution history pertaining to the patent." 37 C.F.R. § 42.100(b).

*See* '762, '330, '002 and '549 *IPR* Petitions filed by Apple at 5. Apple also submitted expert declarations in support of each of its *IPR* Petitions in which the expert expressly agreed with the claim constructions adopted by Apple in the Petitions (*e.g.*, see ¶63 in the Declaration of Dr. Tal Lavian, submitted in support of the '549 IPR (hereinafter, "the '549 Declaration"). To take one

relevant example of the expert's testimony, ¶76 of the '549 Declaration likewise emphasizes the ***user-specific*** nature of the allegedly invalidating prior art combination:[6]

> "76. Second, the system of Chu already contains the infrastructure needed to support such reformatting based on a ***user-specific profile***. Chu expressly discloses geographically dispersed subscribers each of whom may use ***subscriber-specific dial plans***. Chu at 12:60-64… In such a system, … a subscriber's dial plan, in addition to an ID of the server, ***must necessarily include unique subscriber-specific information*** such as an E.164 telephone number, globally unique database key, ***other user-specific information*** [sic]. Because one subscriber may call another, such a system would necessarily support storing a ***user-specific dial plan*** for the callee in the database as well. The user's local dial plan could be retrieved from a remote database server using the caller identifier (e.g., the caller's phone number or ***other user-specific information***)… Thus, the infrastructure of Chu would support locating a ***user-specific profile***, which could then be used to perform dialed digit reformatting based on ***attributes of the caller*** such as location and area code."

Apple's (and its expert's) claim constructions under 37 C.F.R. § 42.100(b) before the PTAB are an explicit admission that the claims-at-issue require user-specific attributes, profiles or processing. Furthermore, Defendants are notably silent about claims that expressly recite "user-specific" attributes (*e.g.*, *see* claims 11 and 12 of '549 Patent; claims 9 and 12 of '002 Patent)—which further undercut Defendants' allegation that the claims "do not specify… whether [processing] must be "specific" to a user." (Reply at 6.) Defendants' contrived requirement that the claims expressly "mention" "user-specific handling" or "user-specific… blocking" (*id.*at 6:22-25, 11:16-18) is a red herring and amounts to an illegitimate *ipsissimis verbis* test having no basis in law. Apple has characterized the prior art in the IPR as disclosing "user-specific" features even where the prior art does not expressly use that terminology itself because it is well-established that a claim may read on a prior art reference yet "need not satisfy an *ipsissimis verbis* test." *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009). Similarly, there is no reason to impose an *ipsissimis verbis* test in the §101 context.

Apple apparently feels comfortable taking contradictory positions in two different proceedings regarding the Patents-in-Suit—one to this Court (for purposes of §101 analysis) and the other to the PTAB (for purposes of §102/103 analysis). On a Rule 12(b)(6) Motion, the Court is

---

[6] To be clear, VoIP-Pal does not agree with Apple's expert but this excerpt again illustrates Apple's strong emphasis on proving that the cited prior art has "user-specific" features akin to the claims.

precluded from considering extrinsic evidence without conversion of the Motion to one for summary judgment under Rule 56. However, VoIP-Pal does not seek conversion to a motion for summary judgment; VoIP-Pal merely points out that the arguments made by Defendants are disingenuous and demonstrate that, at least giving VoIP-Pal the benefit of all inferences in its favor, the asserted claims *do include* a patent eligible inventive concept. Separately, Defendant Apple's *IPR*-related contradictions show that there are genuine issues of fact that preclude dismissal under Rule 12(b)(6). In fact, not only is that dispute created by VoIP-Pal's arguments in its Opposition Brief; that dispute also arises from Apple's arguments alone—interpreting the claims one way to this Court in this case and in an entirely different way to the PTAB in connection with its *IPR* Petition. Indeed, Apple's invalidity arguments and expert evidence in the related *IPR*'s are evidence that ***Apple itself recognizes that the asserted claims recite, or inherently (necessarily) require, user-specific processing of communications***.

The question of whether the claims require such user-specific features is material to the *Alice* analysis at least because: (1) VoIP-Pal has expressly argued for the "user-specific" nature of its claims in the Opposition;[7] (2) Voip-Pal has made factual assertions about technological

---

[7] VoIP-Pal's Opposition effectively adopts and advocates for a claim construction in which the recited "attributes" and "profile" associated with a user originating a communication, are "***user-specific***" (or "***caller-specific***") in nature, such that claimed steps which are *based on* the application of such attributes are necessarily user-specific in nature, for example:

  (1) the claims provide "…an *improved* communication routing system and controller that evaluates ***user-specific profile settings ("attributes")*** in order to identify and classify the destination of a communication… between two distinct networks…" (Opposition at 1:19ff; *see also id*. at 10:8ff.);

  (2) "[unconventional inventive concepts include] the use of caller-specific evaluations of a callee identifier based on ***caller-specific profile settings***, to enable caller-specific initiation and/or vetting of a communication and transparent routing of the communication integrated over a system network… and an external network…" (*see* Opposition at 1:22-2:3); and

  (3) "The technology improves over many prior art blocking methods by…(1) using ***caller-specific attributes*** associated with a caller's profile for determining, ***in a caller-specific manner***, whether or not initiation of a communication is permitted (*See* '762 Patent at col. 20 ll. 14-32); (2) using ***caller-specific profile attributes*** to establish whether an attempted communication is valid, e.g., by evaluating the validity of the called party identifier as a ***user-specific*** determination (e.g., *id*. at col. 20 ll. 30-34 and Fig. 8B);" (Opposition at 12:15-20); and

  (4) *see also* Opposition at 20:8-14 (inventive concept includes "utilizing ***user-specific profile***

improvements that arise from such user-specific features and processing in its First Amended Complaint ("FAC");[8] and (3) Voip-Pal has relied on case law (*e.g.*, *BASCOM*) recognizing that user-specific customization of processing can provide a patent-eligible "inventive concept" under step two of the *Alice* framework (*e.g.*, *see BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC,* 827 F.3d 1341, 1344 (Fed. Cir. 2016) (explaining "individually customizable filtering")).

Apple's unexplained contradictions in the related *IPR* proceedings, in the absence of additional briefing and evidence, raise material disputes about claim construction that are relevant to *Alice* analysis, illustrating that the record in this case has been insufficiently developed such that a decision on the pending Motion to Dismiss would be premature.

### B. Defendants' Reply mischaracterizes the "inventive concept" in BASCOM in a manner that obscures BASCOM's relevance to VoIP-Pal's claims.

Defendants' flip-flop regarding the user-specific features of the claims, also impacts the arguments that Defendants raised regarding the *BASCOM* case. Defendants' argument regarding *Bascom* implies that a "traditional content filter" was merely moved to a different location, i.e., to a server, to form an "inventive concept".

---

*settings* (*e.g.*, "attributes associated with an originating first participant in a communication")… to establish routing of the communication using the identified network infrastructure)…") [emphasis added]

[8] E.g., the First Amended Complaint ("FAC" at ECF No. 81 (Case No. 5:18-cv-06216) and ECF No. 61 (Case No. 5:18-cv-07020))) explains:

(1) "The technology… recited in the asserted claims… supports user-specific calling styles… <u>based on the application of **user-specific attributes**</u>… to route a call… See, *e.g.*, '762 Patent at… 18:40-58 (disclosing a <u>***user-specific dialing profile***</u>…) […] [T]he calling party's identifier is used to locate a ***caller-specific profile*** identifying calling party attributes to be used… All of the asserted claims of the Patents-In-Suit enable user-specific handling of communications; *viz.*, <u>every claim recites **user-specific attributes** that are **used for determining and establishing routing**</u>." (FAC at ¶ 32 [emphasis added]);

(2) "Callers can have ***caller-specific attributes*** associated with their profile for determining *in a caller-specific manner* whether or not they are permitted to initiate a communication… Furthermore, the caller-specific attributes associated with the caller's profile can provide a basis for establishing whether an attempted communication is valid… Notably, <u>what constitutes a valid initiation of a communication was a **user-specific** determination **because it depended on *user-specific profile attributes*…** configurable in a **user-specific** manner</u>." (FAC at ¶ 38 [emphasis added]); and

(3) *See also* FAC at ¶40 (explaining how inventive concept includes use of "user-specific 'attributes'").

9

However, as VoIP-Pal argued, *BASCOM* explained that using content filters on a corporate server or at a remote Internet Service Provider server was already *well-known*. (*See* Opposition Brief at 23:15-16, citing *BASCOM*, 827 F.3d at 1344.) In other words, some "traditional content filters" were *already* located on a server, and thus merely using this "location" for filtering was *not* inventive. The real problem was that such filters were "one-size-fits-all" filters that "use[d] a single set of filtering criteria for all requests for websites from all… subscribers." *BASCOM* at 1344. VoIP-Pal's understanding of *BASCOM* was expressly confirmed by the Federal Circuit in *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F. 3D 1307:

> The patent in <u>*BASCOM* did not merely move existing content filtering technology from local computers to the Internet,</u> [footnote 13] which "<u>would not contain an inventive concept</u>," but "overc[a]me[] existing problems with other Internet filtering systems"—i.e., <u>it solved the problem of "inflexible one-size-fits-all" remote filtering schemes</u> (caused by simply moving filtering technology to the Internet) <u>by enabling individualized filtering at the ISP server</u>. *Id*. at 1350-51. [emphasis added]

*Intellectual Ventures I LLC v. Symantec Corp.*, 838 F. 3D 1307, 1321 (Fed. Cir. 2016). The Court's footnote 13 stated:

> "Indeed, in *BASCOM*, the patent specification acknowledged that several prior art systems already performed content filtering at either local or remote servers. *See* 827 F.3d at 1344." *Id*. at 1321 n.13.

Defendants' contradictory arguments regarding the presence of user-specific features in the asserted claims highlights the incoherence of their argument. Indeed, VoIP-Pal's argument based on *BASCOM* stands: user-specific *customization* of network functionality is a patent-eligible improvement under 35 U.S.C. §101; likewise, VoIP-Pal's technology overcame the problem of the "inflexible one-size-fits-all" manner of how prior art nodes responded to end users' communications an unconventional manner. *See* Opposition Brief at 22:18-23:11. Notably, the claims in *BASCOM* did <u>not</u> recite, *ipsissimis verbis*, the inventive concept of "***customizable* filtering features *specific to each end user*** [installed on an ISP server]." *BASCOM* at 1350 (emphasis added). Rather, the Court accepted the patentee's explanation that "the inventive concept harnesses… network technology in a filtering system by associating individual accounts with their own filtering scheme and elements

10

while locating the filtering system on an ISP server." *Id*. (emphasis added). Thus, the corresponding claim language which *gave rise* to the inventive concept of "customizable filtering features specific to each end user" was (in one example): "…said ISP server <u>associating each said network account to at least one filtering scheme and at least one set of filtering elements</u>…" *See BASCOM* at 1345 (language recited in claim 1 of the '606 patent). Moreover, this patent-eligible claim in *BASCOM* did not specify the "exact rules" for filtering embodied in the "filtering scheme" or "filtering elements." *That* was not the inventive concept; it was rather the *customizability* of the filtering, which was based on *associating* <u>each</u> network account *with* custom filtering schemes and elements. This is analogous to VoIP-Pal's claims, which associate each respective user profile with a user-specific set of communication attributes, in order to similarly provide *customizable*, user-specific communication handling to improve the art. The fact that Defendant Apple has acknowledged to the USPTO that VoIP-Pal's claims require such user-specific features—*while not doing so to this Court*—makes Defendants' mischaracterization of the *BASCOM* case all the more egregious.

### C. Defendant Apple's contradiction also undermines their arguments about an analogus operator.

Separately, Defendants' Reply cites an alleged admission from VoIP-Pal's opposition in the Related Case regarding a purported operator analogy and the information used by operators. *See* Reply at 9:27-10:5 (citing Related Case, ECF 83 at 16).

Defendants' Reply attempts to rely on an alleged "admission" in VoIP-Pal's Opposition Brief in the Related Case and does so in a misleading manner. Defendants argue that the (*arguendo*) possibility that telephone operators might have used other information sources for ***non-routing purposes*** somehow "undermines" VoIP-Pal's assertion that they would not have used such information or analogous methods in order "to ***make routing decisions***" (Opposition Brief at 17:7-14). ***It does not***. Defendants' inference is a *non-sequitur*. VoIP-Pal's position was (and remains) that there is "no factual evidence [of record] to show that the operators would have utilized information sources and methods of analysis analogous to those recited in the asserted claims" in order "to ***make***

11

*routing decisions*." *Id*.

And it is this user-specificity that Defendants' contended was not part of the claims but now Apple admits to the USPTO is necessarily embraced by the prior art in order to invalidate the same claims. This is yet another reason to conclude that there remain factual disputes unresolvable at this stage.

## III. CONCLUSION

For the foregoing reasons, and in addition to the reasons set forth in Plaintiff's Opposition, Plaintiff respectfully requests denial of Defendants' Motion to Dismiss.

| | |
|---|---|
| New York, New York<br>August __, 2019 | Respectfully submitted, |
| | _____<br>MALEK MOSS PLLC<br>Kevin N. Malek (*pro hac vice*)<br>340 Madison Avenue, FL 19<br>New York, New York 10173<br>(212) 812-1491<br>kevin.malek@malekmoss.com |
| | CARLSON & MESSER LLP<br>David Kaminski<br>  kaminskid@cmtlaw.com<br>J. Grace Felipe<br>  felipeg@cmtlaw.com<br>5901 W. Century Boulevard<br>Suite 1200<br>Los Angeles, California 90045<br>Tel: (310) 242-2200<br>Fax: (310) 242-2222 |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing PLAINTIFF VOIP-PAL'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' CONSOLIDATED MOTION TO DISMISS has been served on August __, 2019, to all counsel for Defendants through the Court's CM/ECF system.

_____